# Ealer Estate

*Laub & Laub*, for accountant.

*John Watts Barrett, Jr.*, and *Jerome E. Brose*, for exceptant.

PALMER, J., January 30, 1958.—This matter is before the court on exceptions to the second and partial account of Anna Nora Ealer, executrix of the Estate of Samuel S. Ealer, deceased.

Decedent died on August 4, 1936, owning numerous parcels of real estate situate in Northampton County. The Easton Trust Company and decedent's widow, Anna Nora Ealer, qualified as executors. A first and partial account was filed by the executors covering the

administration of the estate for the period August 4, 1936, to September 11, 1937. No exceptions were filed to this account and it was thereupon confirmed absolutely. An addendum to this first and partial account covering the period September 11, 1937, to December 19, 1937, was prepared and furnished to all parties in interest although not filed in the orphans' court. On or about December 19, 1937, The Easton Trust Company resigned as coexecutor and from that date to the present, Anna Nora Ealer, now approximately 80 years of age, has been the sole executrix.

Frederick Ealer, one of the legatees under the will of his father, Samuel S. Ealer, obtained a rule upon his mother, the executrix, to show cause why she should not file an account as executrix. On March 7, 1956, a decree was entered directing her to file such an account.

On January 14, 1957, the executrix filed her second and partial account which was listed for confirmation nisi on March 4, 1957, and audit on March 27, 1957. Following its confirmation nisi, Frederick Ealer filed seven exceptions thereto. Subsequently, another son and legatee, Edward R. Ealer, filed an additional exception. A hearing on the exceptions was held on April 24, 1957, and on September 9, 1957, an additional hearing was held at the request of the court.

1. Exception of Richard R. Ealer:

"1. There is no accounting for the properties known and commonly referred to as the 'Group Properties' for the period September 11, 1937, to the date of conveyance of said properties to The Easton Trust Company."

Accountant filed an answer to this exception as follows:

"1. Accountant is not legally liable to furnish an accounting for the properties owned by the decedent, Samuel S. Ealer, at the time of his death and known as and commonly referred to as the "Group Properties"

for the period September 11, 1937, to the date of the conveyance of same to The Easton Trust Company, to wit, December 26, 1939, nor is she able so to do, for the following reasons:

"(a) Prior to August 7, 1935, the decedent had become seized of various parcels of real estate and had executed various bonds and mortgages in favor of the Easton Trust Company constituting liens against the same, the total principal sums of which, on the aforesaid date, amounted to approximately $118,000.00.

"(b) On August 7, 1935, the payment of principal and interest on all of the said bonds and mortgages was in default, and the decedent and Easton Trust Company entered into an agreement providing for the management of the properties covered by the said bonds and mortgages, wherein the decedent was charged with the duty of collecting all rents from the said properties and depositing the same in a special account in the Easton Trust Company for disbursement by the Easton Trust Company alone. The term of this agreement commenced on the date of the execution thereof and was to conclude at such time as all of the said mortgages had been satisfied.

"(c) The aforesaid management agreement was in effect on the date of death of the decedent, to wit, on August 4, 1936, and was binding upon the Accountant, and the said agreement was not terminated until December 26, 1939, at which time all parties in interest in the decedent's estate conveyed their respective interests in the 'Group Properties' to the Easton Trust Company in consideration of the satisfaction of the said mortgages and the surrender of the bonds accompanying the same.

"(d) Inasmuch as the aforesaid agreement was binding upon Accountant, none of the rents and profits of the 'Group Properties' were collected by her, or her agents, in her capacity as executrix, so that none of

the same ever became a part of the assets held by Accountant as executrix and for which in that capacity she is legally liable to render an account, but on the contrary, all rents and profits from the 'Group Properties' collected during the period in question were collected under and by virtue of the aforesaid special account of the Easton Trust Company, and were disbursed by the Easton Trust Company alone and not by Accountant."

Nothing was presented to the Court in the pleadings which indicated what the "Group Properties" consist of or why they are so designated. On inquiry, the court was referred to the eighth paragraph of a petition presented to the court on December 7, 1939, by the executrix and joined in by all of the parties in interest including the two exceptants in these proceedings. This petition recited that at the time of his death, decedent owned certain enumerated parcels of real estate in the County of Northampton. On August 19, 1935, prior to decedent's death, The Easton Trust Company became the mortgagee in possession of these properties and thereafter managed the same. By the petition, the executrix asked leave to sell 17 parcels of this real estate to the mortgagee in consideration of The Easton Trust Company satisfying the mortgages on all of the properties. The prayer of this petition was granted on December 26, 1939.

By stipulation of counsel at the hearing on the instant exceptions to the second and partial account, it was agreed that the group of properties so conveyed to The Easton Trust Company was to be designated in these proceedings as the "Group Properties" and those not so covered as the "Estate Properties."

The executors included the group properties in their first and partial account and in the addendum to this account hereinabove referred to. They were not included in the second and partial account which is now

before the court for audit. At the initial hearing, the court was requested to take judicial notice of an agreement of sale dated December 26, 1939, and recorded on the same day, in which The Easton Trust Company agreed to sell the group properties to the parties interested in the estate, including these exceptants, upon the terms and conditions therein noted.

The sole question before the court, therefore, on the exception of Edward Ealer, is the failure of the executrix in her second and partial account to account for these group properties for the period commencing December 19, 1937, and ending December 26, 1939.

At the hearing this exceptant was represented by competent counsel and took the stand, apparently to testify in support of the exception which he had filed. His testimony in chief is set forth on three typewritten pages of the record. In it, he merely identified himself, admitted that he had filed the exception and stated that he did so because if the group properties were not accounted for during this period, "it can be said later on that I should have had it then . . ."

On cross-examination, he identified his signature on the joinder to the petition of the executrix asking leave to sell the group properties to The Easton Trust Company.

The executrix' answer to this exception filed in the office of the clerk of the orphans' court a month prior to the initial hearing, constituted a detailed notice to exceptant of what the executrix hoped or was prepared to prove in the event exceptant at the hearing introduced evidence indicating her failure to account for the group properties for the period in question was improper. Despite this notice, or perhaps because of it, exceptant made no effort at the hearing to sustain his burden of showing the executrix improperly failed to account for the group properties for the period December 19, 1937, to December 26, 1939.

Where exceptions are filed to an executor's account, the burden is on exceptant to establish his claim; Schafer's Estate, 66 Dauph. 74. Exceptant has not met this burden of proof and his exception is, therefore, dismissed.

2. Exceptions of Frederick Ealer.

At the first hearing, Frederick Ealer withdrew his exceptions numbered 1, 3, 4 and 7. The remaining three exceptions will now be considered.

(a) The exception as filed reads as follows:

"2. On page 96 of the account under October 31, 1954, under November 26, and under January 18, 1955, under March 29, 1956, and elsewhere, moneys are paid to Mr. Van Emburgh to collect rents. Your petitioner believes that the rent should have been collected by the executrix or if someone else were employed to do this job, that the money should be deducted from her commission."

This exceptant was represented by competent counsel and also testified on his own behalf. In his testimony, he made no attempt to specify the total amount of the commissions paid by the estate to Chester Van Emburgh, an Easton real estate broker. The court was referred to the second and partial account to collate these payments for itself. This account consists of 108 typewritten pages. The court has searched this account for these payments and has noted 27 of them scattered between pages 36 and 100 and totaling $1,539.85. The first appears on page 36, is dated September 12, 1940, and amounts to $22.50. The second appears on page 51, is dated June 17, 1942, and is in the amount of $20. The remainder appear between pages 96 and 100 of the account and are between October 31, 1954, and October 26, 1956. The court does not know and cannot determine either from the wording of the exception or from the testimony whether excep-

tant objects to *all* the payments made to Van Emburgh or merely to those made to him after October 31, 1954.

At the initial hearing, exceptant testified in connection with this exception, that each of decedent's children on occasion collected the rents although as a general practice, his sister, Stella Ealer, made these collections. Exceptant himself, while on the stand, made no mention of Mr. Van Emburgh nor did he present any testimony from which it could be determined whether Van Emburgh's employment as a real estate agent was improper. Thus, William A. Rollka, Esq., a husband of one of decedent's heirs, in connection with the instant exceptions, merely stated that he knew Mr. Van Emburgh was paid a commission to collect rents. This witness further testified that Stella Ealer collected rents and that Frederick and Edward Ealer may also have done so. Edward Ealer testified that the rents were generally collected by his sister, Stella, and from time to time, Edward Ealer also made these collections.*

At the rehearing on September 9, 1957, the executrix went forward with the evidence. She introduced

---

* What has been said above in connection with the burden of proof on exceptants to an executor's account would have been equally applicable with respect to this exception had the court not on July 11, 1957, requested a rehearing in order that evidence might be introduced into the record on the following:

"(1) What duties did the Executrix perform in connection with the estate?

"(2) What were the special circumstances which made it necessary to employ a real estate agent? If it was unnecessary to employ a real estate agent for rental collections prior to 1954, why did it become necessary after that date?

"(3) Why was it necessary to employ an accountant to prepare the account? Apparently he used Stella Ealer's records. What was the condition of those records? Were they such that the employment of an accountant was necessary?"

Pursuant to this request an additional hearing was held on September 9, 1957.

into the record a letter to Van Emburgh from the executrix dated September 21, 1954, retaining his services in the management of the estate properties located at 228 North 14th Street, 121 to 135 Delaware Street and land appurtenant to, but not including, 112 North 4th Street, all in the City of Easton. By this letter, Van Emburgh was authorized "to collect all rents, to enter into and execute contracts for repair and materials necessary for the upkeep and management of said premises, to pay all taxes, claims or indebtedness of any type whatsoever constituting valid liens against the premises, to make repairs and any and everything necessary to the management of the premises within the normal course of the business of renting the same, with the exception of effecting a sale of all or any part thereof or making any major repairs in excess of $200 to the same without first obtaining my consent as Executrix."

The letter went on to say that for these services, the estate would compensate Mr. Van Emburgh in the sum of 10 percent of the gross amount of the rents collected by him and that in those cases where he obtained new tenants, the estate would also pay him the standard fee set by the Easton Real Estate Board for such service. With respect to the properties on Delaware Street, Mr. Van Emburgh testified that they were uninhabitable, that no rents were collected from them nor improvements made thereon and that ultimately they were razed by the City of Easton and that a lien for the expense of such razing had been lodged against them. No rents were collected from the 4th Street property and, therefore, the commissions which were paid to Mr. Van Emburgh were paid to him in connection with his management of 228 North 14th Street.

Mr. Van Emburgh described this property as being a large frame house or hospital converted into a makeshift apartment house containing nine apartments, and

located on a lot approximately 200 x 200 feet. This property also contained eight garages, had a driveway, a large lawn, hedge and trees. The highest rent received for any of the apartments was $72.50 and the lowest $45. He testified that during the time he was managing the property, because of his professional connections he was able to obtain tenants more promptly than would one not in his business, that he had the necessary interior papering and painting done and was able to obtain paint and paper more cheaply and to have the same applied more promptly than would one not in his business. He also testified that he installed a new gas range in one of the apartments and that because he was a member of the Easton Real Estate Board, he was able to purchase it at a substantial discount which he passed on to the estate. He directed the removal of snow, the clipping of hedge, the cutting of grass, the removal of leaves and tree debris from the property, and he supervised the cleaning of halls and all the other work which was necessary for maintaining and operating a property of this kind. The management rates of the Easton Real Estate Board which were 10 percent of gross collections during the period in question were also put into evidence. Van Emburgh stated that because of the nature of this particular property, it could more economically be handled by him as a real estate manager at 10 percent of gross collections than by this executrix at no charge because he was able to maintain a higher occupancy rate than she would be able to maintain.

It appears to the court that the service of Mr. Van Emburgh, an experienced real estate manager, was beneficial to this estate. The property which he was called upon to manage was inconveniently situated so far as this executrix was concerned. Considerable supervision was necessary in order to maintain both the exterior and interior of the property. It is undisputed that he was able to maintain a higher occupancy rate

than the executrix could have done because of his professional connections and his professional ability. The rate of 10 percent of gross rentals which he charged for these services was the recommended rate of the Easton Real Estate Board. Exceptant introduced no testimony either to show that Mr. Van Emburgh's retention by the executrix was not beneficial to the estate or to show that the amount he was paid was excessive. It must also be recalled that the executrix is a woman of advanced years and could not properly be expected to perform the work in connection with this property which Mr. Van Emburgh performed. For these reasons, we do not feel it would be appropriate to deduct the amount of the commissions paid to Mr. Van Emburgh from the commission of the executrix. See Casely's Estate, 23 Pa. Superior Ct. 646; Bauerlein's Estate, 59 Pa. Superior Ct. 647; Wood's and Martin's Appeal, 86 Pa. 346; Kern's Estate, 29 D. & C. 71. This exception is, therefore, dismissed.

(b) 5b. Exceptant excepts to the item of $798 paid to Arthur L. Kellow, for accounting services in preparing the second and partial account.

At the first hearing the only evidence introduced by exceptant remotely relevant to this exception consisted of a bare statement by Mr. Rollka that Stella Ealer kept the books of the estate and an equally bare statement by exceptant, himself, that his sister, Stella, "did the bookkeeping". At the rehearing, the executrix went forward with the evidence on this exception just as she did in connection with the exception above discussed.

Arthur L. Kellow testified that he had been a practicing accountant for the past 20 years and that he had been employed by the executrix to assist her in preparing her second and partial account. He received from her, or her daughter, Stella Ealer, a number of sheets of paper containing original entries in connection with

the income from and expenses incurred in the administration of the estate over the accounting period. Mr. Kellow prepared work sheets from the material submitted to him and the court from observation of these work sheets estimated they consisted of a stack of papers about one and one-half inches high. The records submitted to Kellow by the executrix were on a yearly basis and it was necessary for him to transcribe and reconcile them. Similarly, each property of the estate was individually listed on the sheets submitted to him and these entries had to be separated and accumulated. The documents submitted to him did not comply with the court requirements for estate accounts and it was necessary for him to arrange the entries in the required form. In this connection, he consulted from time to time with the attorney for the estate to determine the character of certain entries, that is, whether they were principal or income. Mr. Kellow kept a time sheet and spent in excess of 200 hours in preparing this second and partial account which, as above noted, consists of 108 typewritten pages. He testified that the reasonable rate for such accounting services at that time in Northampton County was $5 an hour but that he had charged the estate $3.50 an hour because of his friendship towards the attorney for the estate. He offered his opinion as a public accountant that under all the circumstances it was necessary for this executrix to employ an accountant to prepare and present her second and partial account.

Mr. Kellow's testimony was uncontradicted. Exceptant introduced no testimony from which it could be found that the employment of Mr. Kellow was improper or that the charge for his services to the estate was excessive.

The propriety of the employment of an accountant by the executor of an estate to prepare or to aid in the preparation of an account at the expense of the estate

depends on the facts of each case just as does the employment of a real estate agent, a clerk or an auctioneer. The court cannot ignore the fact that accounts of personal fiduciaries are generally prepared by their attorneys. Our court rules are such as to make it virtually impossible for a proper fiduciary account to be prepared except by one conversant either with accounting procedures or with the handling of trusts or estates. In a county such as ours, in which most attorneys practice law individually, the preparation by the estate attorney of an account such as the one here involved, would be uneconomical so far as the attorney is concerned. It will be recalled that this account consists of 108 typewritten pages, covers a period of approximately 20 years and took a trained accountant over 200 hours to prepare. While we do not hold that the employment of an accountant by an executor to prepare an estate account at its cost is justified in every case, we do believe that under the circumstances of this case, the employment of Mr. Kellow was justified. His charge was not excessive and was a proper estate expense and should not be deducted from the executrix' commission. We, therefore, dismiss this exception.

(c) 5a. Exceptant excepts to the payment to executrix of a commission of $5,456.56 on the ground that during the period of time in which she was executrix "she did not handle the estate herself but rather permitted the estate functions be usurped by other persons."

Decedent's widow, the mother of exceptants, has served as executrix since 1936. At the time of the hearing, she was a woman in her 80's. It was undisputed that the only claim for commission which she has ever made is her present claim for $5,456.56 constituting five percent of the income of the estate during the period in which she has served as executrix.

As above noted, the books of the estate were kept not by the executrix but by her daughter, Stella. Similarly, the executrix did not prepare the account but rather it was prepared by Mr. Kellow who was paid therefor by the estate. It will also be recalled that from October 31, 1954, until the end of the accounting period, the management of the real estate which constituted the principal asset of the estate was handled not by the executrix but by Mr. Van Emburgh. Prior to Mr. Van Emburgh's employment, the management of the property was handled not by the executrix but by her children. On the other hand, no major decision was taken in connection with the estate without the executrix being informed by Mr. Rollka, Stella Ealer or Mr. Laub. Mr. Rollka advised her that the ultimate responsibility in connection with the estate was hers.

It is, therefore, apparent, that this executrix did not perform the duties which an executrix is expected to perform in order to be compensated at the customary rate of five percent of income.

The basis on which an executor's compensation is determined is stated in Reid's Estate, 250 Pa. 103, as follows: "From an examination of the authorities relative to the amount of commission paid to executors, it appears that the labor and responsibility of each particular case determine what is a fair compensation for services performed. It is not a question whether or not the services are worth two, three, four, five or more percent, but what is a fair and just compensation for the administration of the estate by the accountants." See also Taylor's Estate, 281 Pa. 440; Faust Estate 364 Pa. 529.

This executrix did bear the ultimate responsibility for the estate. Unquestionably, she devoted a portion of her time to its affairs. She is, therefore, entitled to some compensation but not the compensation to which she would be entitled had she collected the rents, kept

the books, managed the property and prepared the account. Under these circumstances, we believe she will be fairly compensated by a commission equal to two percent of the income of the estate, that is, a commission of $2,182.46 rather than one measured by five percent thereof. This exception is, therefore, denied in part and sustained in part.

Paragraph 6 of the exceptions of Frederick Ealer does not set forth an exception to the account and is, therefore, not considered.

### Order

And now, January 30, 1958, it is adjudged, ordered and decreed that the exception of Edward R. Ealer to the second and partial account of Anna Nora Ealer, executrix of the Estate of Samuel S. Ealer, deceased, be and the same is denied and dismissed, and it is further adjudged, ordered and decreed that exceptions numbered 2 and 5b of Frederick Ealer to said account be and the same are denied and dismissed; exception no. 5a of said Frederick Ealer is denied in part and sustained in part in accordance with the foregoing opinion, and the account as modified is confirmed absolutely unless exceptions be filed thereto within 10 days from the date hereof.