## Montgomery's Appeal.    Wharton's Estate.

1. While, as a matter of convenience, the compensation of a trustee or executor may be arrived at by the way of a percentage on the amount of receipts and disbursements, the proper and more usual course is to ascertain what the services of the trustee have been actually worth, and to award a fair and just compensation therefor.

2. A trust company, which by law was exempted from liability for any depreciation of stocks while in their possession, charged, and the court below allowed, five per cent. commissions on $41,905, the whole estimated value of an estate of which the company were executors. This estate, with a nominal exception, passed to the residuary legatee at its appraised value. It consisted wholly of stocks and loans, only $4000 of which were converted into cash when the executors' account was filed. About $5000 of debts were paid, and the stock dividends and interest on loans collected. *Held* (reversing the court below), that $500 and a counsel fee of $100, were sufficient compensation for these services.

3. The executors were also trustees under the will as to $20,000 of the estate for a particular purpose. *Held*, that they will be entitled to an additional allowance of $200, when said $20,000 of assets are converted into cash and passed to the credit of the trust estate; but this allowance is not to be credited upon their account until such conversion is made.

February 7th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1876, No. 102.

Appeal of John T. Montgomery and Alida G., his wife, from the decree of the court in the matter of awarding commissions to the executors under the will of Edward Wharton, deceased. Edward Wharton died in May 1873, having made a will in which he appointed the Pennsylvania Company for Insurance on Lives, &c., his executors. The testator, after creating certain trusts in favor of Mrs. Kate Lawrence, and of his son, an infant, to the extent of $20,000, bequeathed the residue of his estate to his sister, Mrs. Alida G. Montgomery, one of the appellants. The estate, consisting mainly of stocks, was appraised at $34,460.75, which was subse-

quently increased by interest, dividends, &c., to $42,385,93, at the time of filing the account.

The executors filed their account on the 16th June 1874, in which they took credit for various payments, amounting to $2552.95, and charged themselves with unconverted assets in their hands, amounting to $37,304; they also took credit for the sum of $2095.26, as commissions due them as executors, being five per cent. on the entire estate which had come into their hands at that date. They subsequently filed a supplemental account, in which they deducted as further commissions five per cent. on all income collected. Objection to these commissions was raised before the auditor, as appears in his report, who sustained the objections, and awarded the accountants the sum of $500, in full compensation for their services as executors, and surcharged them with interest at the rate of four per cent. on the amount retained by them as commissions. To this reduction of their commissions the accountants excepted, and their exceptions were sustained by the court below, and a decree entered recommitting the report to the auditor, with instructions to allow the commissions as claimed; to which decree this appeal is taken.

A question arose before the auditor as to the nature of the bequest of $20,000, whether it was to be paid directly to Mrs. Kate Lawrence, or whether it was to be held by the executors as trustees. The auditor decided in favor of the direct payment to Mrs. Lawrence; to which finding both the appellants and appellees excepted, and their exceptions were sustained in the court below, and the appellees continue to hold the said fund in trust.

The auditor, inter alia, reported: "The whole difficulty arises from the mistaken view that commissions are to be paid as *commissions*, not as compensation for labor, care and responsibility. Quoting from Harland's Accounts, 5 Rawle 330, the language substantially used by this court, he proceeded:—

"It is in view of this decision, the facts above referred to and the peculiar fitness of the case in hand for departing from the custom of paying the executors in the form of commissions, that your auditor has determined upon the award of a sum in gross to them for their compensation.

"In order that your honorable court may the more readily and better understand the whole ground of your auditor's determination, it will be necessary to refer to some facts appearing in the account and others coming to his notice through the counsel of the parties in interest. An examination of the account will show that the estate, as it came to the executor's hands, consisted wholly of stocks and a small amount of furniture. The subsequent receipts were only of stock and cash dividends and interest. The debts paid were seven in all, besides the one contested before your auditor; and these debts, he is satisfied from what occurred before him,

[Montgomery's Appeal.]

were paid with the approval and after the examination of the residuary legatee, who also took the furniture at the appraised value. When the original account was filed, none of the stocks had been converted into cash, but the supplemental account shows the sale of some, and under the decision above made with reference to the $20,000 legacy, in will be necessary to convert enough of them to provide that fund. It appears then that all but about $16,000 worth of the stocks have been or will have to be converted into cash by the executors.

"What, under the circumstances, is a proper compensation to the accountants for 'their responsibility incurred * * * and the sum of the labor expended?' It may be proper here to say that if they seem to have incurred a risk in not changing stock into a legal investment, they did an act for which they cannot be compensated. It was decided in Stearley's Appeal, 2 Wright 525, that a trustee cannot claim compensation for services self-imposed, and resulting from his own wrong; and it is certainly quite as true that he cannot be compensated for a risk that he should not have taken. On the other hand, if the accountants should have changed the stock into legal investments, and did not, they cannot recover for services which they should have performed, but did not render. It was said by STRONG, J., in McCausland's Appeal, 2 Wright 470, that 'commissions are given as a compensation for labor and responsibility, and where neither the one has been performed nor the other incurred, there is nothing to be compensated.' And, indeed, the principle laid down in this case would seem to deny all commissions to the accountants (if we had adopted that mode of measuring their compensation) on such of the stocks as have not been and will not have to be converted into cash.

"Under all the circumstances of the case, the almost total absence of authorized responsibility and the very slender services performed, your auditor is of the opinion that the accountants would be liberally compensated by the sum of $500, and this he accordingly awards them. The credits claimed, therefore, of $2995.26 and $11.48, are refused, and it is also ordered that the accountants allow interest on these sums at the rate of four per cent. from the time they were credited with them respectively. With these exceptions, the credits claimed in the account and supplemental account are allowed."

In sustaining the exceptions to this report filed by the executors, the court, Hanna, J., in an opinion, said:—

"The auditor has examined with great care the questions presented to him, and conscientiously performed the duties assigned to him, but we are obliged to disagree with his views upon the subject now brought to our notice.

"In Harland's Accounts, 5 Rawle 330, GIBSON, C. J., says, that the compensation of accountants, though usually awarded in

the form of commissions, is not determinable by any established practice or rule, being graduated to the responsibility incurred, the amount of the estate, and the sum of the labor expended. Recognising the principle thus announced, executors and other trustees, for the faithful performance of the ordinary duties of the trust, have generally been compensated by a commission of 5 per cent. upon the amount of the personal estate, and 2½ per cent. upon the proceeds of real estate. This has become the established practice and rule. And where additional trouble has been occasioned in the settlement of the estate, an increased commission has been frequently allowed.

"In Robinson's Estate, 5 Phila. Rep. 99, it was decided by this court, Ludlow, J., in view of want of proper care and use of certain moneys of the estate by the executor, though under a claim of right, that his commissions should be reduced to 3 per cent., and by reason of his responsibilities for certain securities, investments of the testator, he was allowed 2½ per cent. as custodian of the certificates. In the late case of Eshelman's Appeal, 24 P. F. Smith 42, the estate, consisting of realty and personalty, amounted to about $75,000, and a commission of 5 per cent. was allowed upon the personalty, and 2½ per cent. upon the proceeds of the real estate. We think the general rule mentioned applicable to the present estate. There were no extraordinary services performed, but, as in Eshelman's Appeal, it was 'attended with the quantity of trouble, care and responsibility, which the settlement of intestates' estates ordinarily imposes.' The executors here are entitled to the same compensation as would be allowed individuals. That they are a corporation does not create any distinction. The same duties are required, and similar responsibilities incurred. Nor can they then be expected to execute trusts without just compensation. They incur expense for reliable officers, clerks and other employees; are subject to taxation of their real and personal estate, and the individuals composing the corporation are entitled to a return for the risk of the capital invested, and liable for the honesty and careful management of their employees."

*John Cadwalader, Jr.,* for appellants.—These securities were investments of the testator, and under the Act of Assembly of April 6th 1870, Pamph. L. 986, were held by this company without any responsibility for their depreciation. The commissions demanded by the executors were excessive: Pusey *v.* Clemson, 9 S. & R. 204; Walker's Estate, Id. 223; Stevenson's Appeal, 4 Whart. 98; Whelen's Appeal, 20 P. F. Smith 431. The rate of commission is not only excessive, but upon the $20,000 bequeathed to the appellees as trustees for testator's son, no commission on the capital is chargeable until the settlement of the trust account. In awarding a gross sum as compensation the auditor is sustained by

[Montgomery's Appeal.]

Harland's Appeal, *supra,* and the more recent case of Carrier's Appeal, 29 P. F. Smith 234.

*John G. Johnson,* for appellees.—Executors, in Pennsylvania, are allowed a commission of $2\frac{1}{2}$ per cent. on estates, large or small, for the mere responsibility of receiving and paying over personal property. The ordinary trouble of administration entitles them, where the aggregate of the estate is less than $100,000, to an additional compensation of $2\frac{1}{2}$ per cent., or five per cent. in all : Stevenson's Estate, *supra ;* Pusey *v.* Clemson, *supra ;* Gable's Appeal, 12 Casey 395 ; Skinner's Estate, 4 Phila. Rep. 189 ; Eshelman's Estate, 24 P. F. Smith 42.

There is nothing in the present case to take it out of the ordinary rule. The estate was not invested in legal securities, but in hazardous stocks. A few of these were never sold. The major part of them were held, until the last moment, and then were sold at an advance upon the inventory price, and before the fall which thereafter followed. The property required the exercise of a wise judgment by the executors.

An allowance of less than three per cent. is only under very exceptional circumstances : Whelen's Appeal, *supra ;* Stevenson's Estate, *supra ;* Pusey *v.* Clemson, *supra ;* Walker's Estate, *supra ;* Snyder's Appeal, 4 P. F. Smith 69 ; McFarland's Estate, 4 Barr 149 ; Eshelman's Estate, *supra.*

The fact that the executors may be obliged to retain the $20,000 legacy until security is entered, does not prevent them from claiming the ordinary commission upon their administration.

Mr. Justice GORDON delivered the opinion of the court, March 11th 1878.

The compensation of a trustee, of any character, may be arrived at, as a matter of convenience, by the way of a percentage on the amount of receipts and disbursements. But, after all, on all authority, it is a question, not of percentage, but of compensation. When the court has fairly responded to the interrogatory, how much has the trustee earned ? it has discharged its whole duty in the premises. It, therefore, comes to nothing to say, the percentage is large or the percentage is small as compared with the estate, if the executor has received neither less nor more than what his services are worth.

This is in effect but a re-statement of the doctrine of Harland's Appeal, 5 Rawle 323. GIBSON, C. J., in speaking of this matter, says, that, though compensation is "usually awarded in the form of commission, the rate is not determinable by any established practice or rule, being graduated to the responsibility incurred, the amount of the estate and the sum of the labor expended. It may be awarded even in a gross sum, according to a common practice in the country,

which I take to be the preferable one, as it necessarily leads to an examination of the nature, items and actual extent of the services, which the adoption of a rate per cent. has a tendency to leave out of view." So it is said by Strong, J., in McCausland's Appeal, 2 Wright 466: "commissions are given as a compensation for labor and responsibility, and where neither the one has been performed, nor the other incurred, there is nothing to be compensated." This same general idea runs through all the cases and it is useless to enumerate them. Whilst a percentage is constantly spoken of and used because of its convenience, yet, it is compensation, nothing more or less, that is steadily kept in view.

Our present inquiry is, was the allowance by the Orphans' Court to the Pennsylvania Company for the Insurance on Lives, &c., a fair and just compensation for the services rendered by it, as executor, in the settlement of the estate of Edward Wharton, deceased? A review of the facts as presented to us by the auditor and the accounts filed by the appellee, warrant us in saying it was not; that it was much more than was earned. Five per cent. was charged and allowed on forty-one thousand nine hundred and five dollars, the whole estimated value of the estate.

This estate, excepting one hundred and six or seven dollars' worth of furniture passed to the residuary legatee at the appraised value, consisted wholly of stocks and loans ; and of these an amount not exceeding in value four thousand dollars, had been converted into cash at the time the accounts were filed. Debts and expenses of various kinds, amounting to about five thousand dollars, had been, at that period, paid, and the stock dividends and interest on the loans had been collected. If to these we add the ordinary services of proving the will, appraising the assets, filing the inventory, &c., we have the sum total of all that was done by this corporation for this estate. When, in connection with this meagre array of services, we consider the fact that, by an Act of Assembly, this corporation is relieved of all responsibility, which otherwise might attach to it, from a depreciation of the stocks whilst in its possession, we cannot but think that it was far overpaid in the charge and allowance of two thousand and ninety-five dollars in addition to one hundred dollars as a counsel fee. We incline, rather, to approve the auditor's award of five hundred dollars, with the counsel fee, as a more fair and just compensation. As we are not certainly informed whether, since the filing of the accounts, now in hand, the executor has converted stocks sufficient to meet the legacy of Mrs. Lawrence, we may add that, if this has been done, or if not so done, when such conversion is made and the proceeds thereof passed to the credit of the trust estate, an additional allowance may be made, to this executor, in a sum not exceeding two hundred dollars, to be paid out of the residuary estate. It is to be understood, however, that this is to be credited on the executor's account as of the

[Montgomery's Appeal].

date when the conversion of the stock into cash has been accomplished and the proceeds passed to the trust; that it is not to be dated back so as to anticipate interest due to the estate, for this is a method of anticipating the compensation which may result from future services that is not commendable.

The decree of the Orphans' Court, so far as it embraces the compensation of the executor, is now reversed, at the costs of the appellee, and the report of the auditor is restored and confirmed.

PAXSON, J., dissented.