## Wood's and Martin's Appeal. McCloskey's Estate.

M. and W., who were executors and trustees under the will of McC., in their account charged five per cent. for the collection of rents, alleging that there were thirty-six houses belonging to the estate, and that accountants had paid said percentage for collecting the rents. They claimed, in addition, five per cent. commissions as executors. W. was a real estate agent, whose principal business was to collect rents, and he claimed to act as the agent, and received the percentage therefor in that capacity. The court below disallowed the claim for collecting the rents and increased the commissions of the executors to six per cent. *Held*, that in the absence of evidence of peculiar difficulty in the collection of the rents, this allowance was sufficient.

February 26th 1878. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Trunkey, JJ. Woodward, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1876, No. 309.

Appeal of T. Abbott Wood and William H. Martin, surviving executors and trustees under the will of Michael McCloskey, de-

ceased, from the decree of the court dismissing the exceptions of said executors to the adjudication of their second account.

McCloskey died in 1860, and by his will gave his property to his executors in trust to pay the income to his wife, Ellen McCloskey, during the term of her life, and after her death to his daughter, Catharine Mansfield, for her life, then in equal shares to the testator's grandchildren, until the youngest grandchild attained the age of twenty-one years, when the estate should be divided among them. The widow, Wood and Martin were named in the will as executors and trustees. The widow died in August 1869.

The second account of the executors came before the Orphans' Court for adjudication on the 26th of April 1875, and was audited by Dwight, J. In this account the accountants had charged themselves, inter alia, with the rents collected from thirty-six houses, payments of which were made monthly, from September 1st 1869 to March 1st 1875, aggregating $39,837.39. The accountants claimed credits and allowances for the cost of collecting the rents, at the rate of five per cent. on the collections, and which aggregated in the five years $1998.67. Martin was a member of the bar and Wood a collection agent, in the habit of collecting rents, and who had actually collected them in this case. They also claimed an allowance of five per cent. commissions as executors and trustees. The court below disallowed the claim of credit for the cost of collecting the rents, and in lieu thereof increased the accountants' commissions as executors and trustees from five to six per cent. on the gross amount of the rents, and surcharged them with the difference of $1593.34. This adjudication in the court below was one of the grounds of appeal.

The other ground of appeal was that the balance in hand of $4101.25, shown by the account, and which was of the corpus of the estate, was erroneously awarded by the court below to Catharine Mansfield, as income.

It appeared at the foot of the account, in the enumeration of the corpus of the estate, that said balance was composed as follows:—

Cash in the Beneficial Saving Fund          $2573.96
  "        "    Western Saving Fund            1368.07
  "        "    Farmers' and Mechanics' Bank    159.43

                                              $4101.46

The testator had provided, in the codicil to his will, as follows: "It is my will and I order that my executors, as soon as possible consistent with the payment of the several legacies in my said will contained, set apart and deposit in some good saving fund in the city of Philadelphia the sum of $3000, for the express purpose of repairing any damages that may occur to my real estate from fire

or other casualty, to be so kept and used until the division of my estate as in my said will directed."

The said balance on hand of $4101.46, of which $3000 came from the corpus of the estate, the remainder being accrued interest thereon, was held by the accountants under the clause above quoted.

The executors filed exceptions to this adjudication, which were dismissed, when they took this appeal, alleging that the court erred in the surcharge of $1593.54, and in awarding the balance, $4101.46, to the life tenant. The evidence was not brought up with the record, and a portion of the foregoing facts were extracted from the auditor's report and the opinion of the court below.

*W. S. Price,* for appellants.—It was erroneous to award the balance to the life tenant. The fund deposited in the savings fund was to be kept until the division of the estate. In support of the contention that five per cent. should be allowed for collecting the rents, and a fair commission for administering the trusts, the following cases were cited: Rhodes's Estate, 2 W. N. C. 587; Heckert's Appeal, 12 Harris 482; Eshleman's Appeal, 24 P. F. Smith 42; Pusey *v.* Clemson, 9 S. & R. 209.

*William Henry Lex* and *William M. Smith,* for appellees.—It is conceded that it was erroneous to award the whole of the balance to the life tenant, but we contend that she is entitled to the interest which has accrued on the original fund. The will directs that "some good saving fund" should be selected, and it is suggested that the deposit should be designated and confined to one institution of the kind. Of the assets of the estate, a part of it consisted of city loan, bonds and mortgages, and the balance of real estate well located and occupied by good tenants. One of the executors took no active interest in the management of the estate, and the other was by occupation a rent collector and real estate agent. He had the sole charge, and the trustees never employed an agent. Under such circumstances two and a half per cent. would have been ample: Spangler's Estate, 9 Harris 335; Walker's Estate, 9 S. & R. 22; Stevenson's Estate, 4 Whart. 104. In Rhodes's Estate, the decedent instructed his trustees to employ a particular agent and pay him for his services.

Mr. Justice PAXSON delivered the opinion of the court, March 11th 1878.

It is conceded that the court below erred in awarding to the life-tenant the whole of the balance for distribution. This balance was made up in part of the sum of $3000, awarded the accountants as trustees by the auditor upon the first account, to be deposited and kept in some good saving fund in the city of Philadelphia, for the purpose of repairing any damages that might occur to the real

estate of the testator by fire or other ·casualty, and to be kept so invested until the final division of his estate as directed by the codicil to his will.    To the extent, therefore, of the distribution of this principal sum of $3000 to the life-tenant, this decree must be reversed.    But as the testator did not direct the accumulation of this fund, the accrued interest was properly distributed.    The principal should be allowed to remain on deposit, as directed by the codicil.    We decline to designate a saving fund for the deposit, as requested by the appellee, or to make an order to confine it to one such institution.    Any application for such purpose should be made to the court below.

The only question that remains to be considered is the surcharge of $1593.34, being for the several amounts claimed to have been paid by the accountants for the collection of the rents of the real estate.    It was alleged that there were thirty-six houses belonging to the estate, and that the accountants paid an agent five per cent. for collecting the rents.    They charged in addition five per cent. commission as executors.    One of the accountants was a real estate agent, and his principal business was the collection of rents.    He took upon himself this branch of the business of the estate, and gave it his personal attention.    He claims to have acted as agent for the executors, and to have been paid by them five per cent. on the rents received for his services in that capacity.    The court disallowed this claim and surcharged the accountants with the amount thus paid, $1593.34, and increased their commissions to six per cent.

The appellants have not brought up the evidence with this record, and ask us to say as a matter of law, that an executor is entitled to an allowance of five per cent. over his commissions with which to pay an agent to collect the rents of the real estate.    This we cannot do.    It may be that in many cases such an allowance would be proper.    The services of an experienced rent collector might in many instances be highly beneficial to the estate and justify the additional expense; in others wholly unnecessary.    Five per cent. commissions would be ample compensation to an executor in the case of a store renting for $10,000 per annum, while ten per cent. might be inadequate for a house renting for $100.    Much depends upon the character of the property as well as its rental value.    If old and out of repair, and inconveniently located as to the residue of testator's property, the labor would be proportionably increased. All these and others that might be specified, are matters of fact essential to a correct understanding and decision of the case.    All we know is that some of the houses were small; but how located, in what condition of repair, and occupied by what class of tenants, we are not informed by this record.    We are not disposed to convict the court below of error upon such a meagre presentation of the

facts.   But for the error set forth in the second assignment this decree must be reversed.

> The decree is reversed at the costs of the appellee, and it is ordered that the record be remitted to the court below with directions to make distribution in accordance with the views set forth in this opinion.