618 A.2d 456

**Estate of Ursula C. GETZ. (Three Cases)**

**Appeal of Margery GETZ, Appellant. (Three Cases)**

Superior Court of Pennsylvania.

Argued Nov. 17, 1992.

Filed Dec. 30, 1992.

514

John A. Hiscott, Stroudsburg, for appellant.

Marianne S. LaVelle, Lehighton, for heirs of Tillie Getz, participating parties.

Roger N. Nanovic, Jim Thorpe, for Luther, Lawrence, Robert and Wilbur Getz, participating parties.

Before OLSZEWSKI, KELLY and HOFFMAN, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether the executors of an estate should be surcharged for: expenditures for taxes, insurance and maintenance for real property pending the sale of the property; payment of real estate broker's commissions paid to an executor who also served as a real estate broker; and attorney fees paid to the estate's attorney. We conclude that the trial court did not err in refusing to surcharge the executors. Therefore, we affirm the December 16, 1991 orders of the trial court.

The facts and procedural history of this case may be summarized as follows. On February 10, 1957, Ursula C. Getz died. According to the wishes expressed in the joint will which she had shared with her late husband, Robert Getz, she left $5,000, to be paid within ten years of her death, to each of three daughters.[1] The residue of the estate, which consisted mostly of 5,000 acres of uninhabited, forested land in Carbon and Monroe Counties, was left to Ursula Getz's six sons, Robert L. Getz, Maurice C. Getz, Warren L. Getz, Wilber L. Getz, Lawrence G. Getz, and Luther A. Getz. The six sons were named executors of the estate. The will provided, in relevant part:

\* \* \* \* \* \*

ITEM IV. We hereby expressly authorize our hereinafter named executors, if they shall so elect, to continue and operate during the administration of our estate, any farming operation, business or other enterprises in which we are interested at the time of our death; all profits and losses

---

1. Ella L. Phillips, Minerva M. Miller, and Orphelia C. Murphy.

therefrom belonging to and falling upon our estate and not upon the executors; it being our plan that there should be no interruption in the farming operations, business or enterprises during the period of the administration of the estate. It is our wish and desire that our sons will, as partners or as stockholders in a corporation to be formed by them if they so desire, continue the business and enterprises forming part of our estate, under the name of "Robert Getz & Sons".

\* \* \* \* \* \*

ITEM VI. We direct our executors hereinafter named, to convert our estate, real, personal and mixed into money or its equivalent, at either public or private sale or sales and for such consideration or considerations as to them may seem fair and as to real estate to execute and deliver deed or deeds therefor with the same legal force and effect as we could, if living.

Joint Will of Robert Getz and Ursula C. Getz, Aug. 24, 1954, at 1.

The estate was heavily encumbered by mortgages and judgments. By 1965, through the sales of various parcels of real estate, the estate paid $5000 to each of the three legatees. By 1969, the judgment creditors were either paid in full or contented with payment plans,[2] and by 1971, the mortgages were satisfied.

The executors signed an agreement on May 24, 1965 (1965 agreement), in which they expressed their desires to continue the administration of the estate and the businesses of their parents, and to sell the real estate at the highest prices obtainable. 1965 Agreement at 1. The parties, as residuary beneficiaries, authorized the executors "to sell at private sale or if more advantageous at public sale for such sum or sums as they in their discretion deem satisfactory and at such time as they in their discretion deem beneficial to the Estate." *Id.* at 2, para. 3. The agreement was made binding on all successors of all parties thereto. 1965 Agreement at 3, para. 7. Thereafter, under the stewardship of Maurice Getz, who handled most

2. The estate's attorney, George A. Shutack, eased the troubles of the estate by buying the judgments and accepting lesser monthly payments.

of the estate business, the executors were slow to sell land parcels, contemplating that they could obtain a better price in the future. Indeed, no land was liquidated between 1974 and 1986. N.T. April 8, 1988 at 45–50.

In 1966, one of the executors, Warren Getz, died. Maurice Getz died on July 31, 1974. He left his interest in the estate to his wife, Margery M. Getz, appellant herein.

In 1976, the four remaining executors entered into a fee arrangement with the estate's attorney, George A. Shutack. The 1976 agreement confirmed an oral agreement made in 1957. The 1976 fee agreement explained that Shutack had agreed to perform all services in the administration of the estate on a contingent fee basis. It was further agreed that Attorney Shutack would receive additional compensation for other matters, such as condemnations, actions to quiet title, and preparing tax returns.

On April 6, 1979, the four remaining executors agreed among themselves that, because the legatees preferred a distribution in kind, such distribution should be made, instead of attempting to sell the real estate in a "slow" market. They further acknowledged that the only administrative expense yet to be paid was a balance of $155,250 due Attorney Shutack, pursuant to the fee agreement, as of December 13, 1978. At the time of this agreement, only 1900 acres remained to be distributed.

On March 15, 1980, the four executors/residuary beneficiaries and the two successors to the deceased residuary beneficiaries, Tillie Getz and appellant, signed an agreement (1980 agreement). In the 1980 agreement, the parties contemplated a distribution in kind. They also recognized a balance due Mr. Shutack and his associate for legal services rendered through December 31, 1979. The parties also recognized the executors' opinion that "the present market conditions are not favorable for making sales based on the highest and best use of the property in view of the fact that environment aspects have slowed down the development of subdivisions." 1980 Agreement at 1–2. They further recognized that

there remains the job of reducing the unconverted real estate to cash at fair prices and closing the Estate; however, the speed with which that can be done will depend on conditions as they develop and as well upon how far the parties concerned desire to go in sacrificing price in order to sell the property[;] accordingly no sales of real estate have been made for several years....

*Id.* at 1.

The parties agreed:

1. That the sales of real estate heretofore made have been made at prices acceptable to the undersigned;

2. That hereafter the Executors shall not be bound by the provision of the Will that all of the real estate shall be sold and converted into money;

3. All other activities of the Executors, in bringing about a successful result, considering that the estate was in a bankrupt condition and considering that it took many years of administration are approved by the undersigned;

4. That the Executors plan as stated above providing for the payment of the balance due attorneys fees are approved;

5. That the plan now in progress for distribution in kind to each of the parties in interest, parcels of substantial equal quantity to them in accordance with maps prepared by Leo A. Achterman are approved.

*Id.* at 2. All six parties signed the agreement, as did appellant's counsel, as a witness. In 1982, each of the beneficiaries received a distribution of real estate. Appellant received seventy acres, while the other beneficiaries received between sixty-seven and sixty-nine acres.

Throughout the existence of the estate, the executors had filed several accounts. After thirteen counts had been filed, the fourteenth account, which was filed on February 22, 1985, was the first to prompt an objection. Appellant objected to that account and also petitioned to remove the executors. The court dismissed the objections to the account and postponed

disposition of the petition to remove executors. On May 6, 1986, appellant filed an amended petition to remove executors.

On May 12, 1986, appellant petitioned for review of several prior accounts. The executors filed preliminary objections, and the court sustained them. Appellant appealed to this Court, and we affirmed in an unpublished memorandum. *See In re Estate of Ursula C. Getz,* 366 Pa.Super. 645, 526 A.2d 1238 (1987).

On January 11, 1988, the trial court ruled on appellant's objections to the fourteenth account and imposed one of several requested surcharges in the amount of $4,603.68. That order was not appealed.

The executors next filed the fifteenth account on November 23, 1987. Appellant filed objections. The court held a hearing which the parties agreed would be held for all relevant proceedings. The court entered an interim order on appellant's Amended petition to remove executors on January 11, 1988. Before the court ruled on the objections to the fifteenth account, the executors filed the sixteenth account, to which appellant also objected on January 28, 1990. The only new objections to the sixteenth account were with regard to real estate commissions paid to Luther A. Getz and attorney fees paid to Roger N. Nanovic, who succeeded Mr. Shutack as counsel to the estate.

On December 16, 1991, the court rendered three orders, dismissing: appellant's amended petition to remove executors, her objections to the fifteenth account, and her objections to the sixteenth account. Appellant has timely appealed, and the appeals from the three orders have been consolidated.

Appellant presents the following issues for our review:

I. SHOULD THE EXECUTORS HAVE BEEN SUR-CHARGED FOR THEIR WASTE AND MISMAN-AGEMENT OF THE ASSETS OF THE ESTATE AND THEIR FAILURE TO PROMPTLY LIQUI-DATE AND DISTRIBUTE THE ASSETS OF THE ESTATE?

II. DID THE EXECUTORS BREACH THEIR OBLI-
GATIONS TO THE ESTATE PURSUANT TO THE
1980 AGREEMENT?

III. SHOULD THE EXECUTORS HAVE BEEN SUR-
CHARGED FOR THE BROKER'S COMMISSIONS
PAID TO LUTHER A. GETZ IN THE 15TH AND
PARTIAL ACCOUNT AND THE 16TH AND PAR-
TIAL ACCOUNT?

IV. SHOULD THE EXECUTORS HAVE BEEN SUR-
CHARGED FOR THE ATTORNEY FEES PAID
IN THE 16TH AND PARTIAL ACCOUNT?

Appellant's Brief at 3.

 "While our review of the Orphans' Court findings of
fact is limited to considering whether they are supported by
the record, we are not so restricted in reviewing the legal
conclusions derived from the facts." *In re Estate of Brojack,*
321 Pa.Super. 154, 159–60, 467 A.2d 1175, 1178 (1983), *citing
In re Ischy Trust, Etc.,* 490 Pa. 71, 415 A.2d 37 (1980). *See
also In re Estate of McCrea,* 475 Pa. 383, 386–87, 380 A.2d
773, 775 (1977) ("In reviewing the decision of the orphans'
court, our task is to assure that the record is free from legal
error and to determine if the chancellor's findings are sup-
ported by competent and adequate evidence, and are not
predicated upon capricious disbelief of competent and credible
evidence.") (citations omitted). Therefore, we address appel-
lant's arguments guarding against erroneous legal conclusions
and unsupported factual findings.

Appellant's first two arguments are related. First she
argues that the disposition of the estate's assets consumed too
much time, and therefore, the executors should be personally
responsible for the property taxes and insurance and mainte-
nance expenses needlessly incurred. Appellant's second argu-
ment, that the executors breached the 1980 Agreement, is in
response to the executor's argument that the 1980 Agreement
precludes any grievances about the amount of time consumed
to sell the assets.

■ After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the distinguished Senior Judge, The Honorable Anthony R. Appel, it is our determination that there is no merit to appellant's first two arguments. The trial court opinion comprehensively discusses and properly disposes of the questions presented. Accordingly, we affirm on the basis of that opinion as set forth below.

Prior to 1987 the executors had filed fourteen Partial Accounts. The first thirteen accounts were either confirmed by the court or approved as family settlements by the parties involved. The Fourteenth and Partial Account evoked objections and proceedings which were disposed of by orders entered by Judge Satterthwaite, specially presiding, by the Superior Court and by an order entered by the writer of this opinion.

\* \* \* \* \* \*

It has previously been noted that the petition for Removal was filed November 25, 1985 with an Amended Petition having subsequently been filed on May 6, 1986. Prior to May 6, 1986 the executors had filed fourteen accounts. The accounts cover the period from the date of death of the decedent, February 10, 1957, to December 31, 1984. The act or omissions which the petitioner relies on to establish waste and mismanagement were consummated or nonfeased during that period of time. The petitioner had her opportunity to raise objections on fourteen different occasions. Excepting as to the fourteenth account no objections were filed.

It is apparent that petitioner seeks in a petition to remove executors to bring before the court issues concerning which she had opportunity to make justiciable over a period of years. The opportunity to bring justiciable issues before the court was lost when she failed to act. She cannot now give life to these acts and omissions as justiciable issues when the opportunity had repeatedly been lost.

We have previously noted that the first thirteen accounts were either confirmed by the court or approved as family

settlements. We have noted that the objections to the Fourteenth Account have been disposed of by the court. Under these circumstances we are unable to conclude that the attempted surcharge in the Petition to Remove is properly before the court.

Trial Court Opinion, Dec. 17, 1991 (Trial Court Opinion), at 3, 6.

Appellant's third argument is that the trial court erred in not surcharging the executors for the broker's commissions paid to Luther A. Getz, an executor. Appellant states that Luther A. Getz put forth no extra effort as a real estate broker beyond his acts as an executor. Appellant also contends that Luther A. Getz is precluded from receiving a broker's commission because he served the estate in a fiduciary capacity. We reject both facets of appellant's argument.

■ "In Pennsylvania, the test for determining the appropriateness of the fees charged for services rendered in the administration of an estate has always been 'reasonableness.' " *Estate of Phillips*, 420 Pa.Super. 228, ——, 616 A.2d 667, 668 (1992), *citing In re Estate of Burch*, 402 Pa.Super. 314, 586 A.2d 986 (1991). An executor is not precluded from rendering additional services for additional pay to the estate which he administers, as long as he shows that his total compensation is reasonable and bears a relationship to the amount of work rendered. Quoting from the trial court opinion in *Estate of Phillips, supra*, we explained:

> Where one person serves as both executor and counsel, he may be entitled to compensation for services rendered in each capacity which do not duplicate each other. He cannot be paid twice for the same work. The accountant has the burden of showing what work he did in each capacity so that this Court may avoid awarding double compensation for duplicated services. *See Shillioto Estate*, 8 Fid.Rep.2d 365 (O.Ct., Allegh., 1988).

*Id.*, at ——, 616 A.2d 667 (citation omitted).

■ In *Wood's and Martin's Appeal*, 86 Pa. 346 (1878), our Supreme Court recognized that an executor may be entitled to

an additional fee for extra services rendered in the capacity as rent collector. In that case, the court refused to find that such fees were warranted as a matter of law,[3] without evidence of the amount of extra work required. *Id.* at 349. The court explained:

> The appellants have not brought up the evidence with this record to ask us to say as a matter of law, that an executor is entitled to an allowance of five per cent over his commissions with which to pay an agent to collect the rents of the real estate. This we cannot do. It may be that in many cases such an allowance would be proper. The services of an experienced rent collector might in many instances be highly beneficial to the estate and justify the additional expenses; in others wholly unnecessary. Five per cent commissions would be ample compensation to an executor in the case of a store renting for $10,000 per annum, while ten per cent might be inadequate for a house renting for $100. Much depends upon the character of the property as well as its rental value. If old and out of repair, and inconveniently located as to the residue of testator's property, the labor would be proportionally increased. All these and others that might be specified, are matters of fact essential to a correct understanding and decision of the case. All we know is that some of the houses were small; but how located, in what condition of repair, and occupied by what class of tenants, we are not informed by this record.

*Id.* Therefore, where the executor can show that he has expended extra effort in a separate and distinct role, he is entitled to fair and reasonable compensation for his additional services. *Id.; Estate of Phillips, supra. See also Geary's Estate,* 3 D & C3d 537 (1976) (roles of executor and realtor); *In re Estate of Steed,* 40 D & C 1 (1940) (same).

■ Paying an executor, instead of a third party, for services rendered is not unfair to the estate.[4] The estate is protect-

---

**3.** Nonetheless, the court affirmed the trial court order increasing the executors' commissions from 5% to 6%. *Id.*

**4.** Of course, an executor is permitted to hire professionals, rendering the estate liable to pay for services rendered. *See, e.g., In re Follans-*

524

ed by the Orphans' Court, which monitors fees, ensuring that "the executor has received neither less nor more than what his services are worth." *Casely's Estate*, 23 Pa.Super. 646 (1903), *citing Montgomery's Appeal*, 86 Pa. 230, 234 (1878).

█ In this case, the real estate broker's commission paid to Luther A. Getz must be upheld if there was sufficient evidence for the Orphans' Court to have concluded that the commission was fair and reasonable in light of the fact that Luther A. Getz was also an executor of the estate. The Orphans Court found that:

> Luther A. Getz was an executor, a beneficiary and a real estate broker. He maintained a real estate broker's office in Carbon County in which real estate salesmen were a part of the operation. In fact two of the properties on which commissions had been paid were sold by two different salesmen in the office.

> The amounts of the commissions are not in controversy nor is it contravened that the sales were effected by the Luther A. Getz realtor office. The basis of the objection is that since Luther A. Getz was an executor he was not entitled to receive broker's compensation.

> \* \* \* \* \* \*

The evidence establishes that Luther A. Getz was employed by the executors to sell the real estate for which commissions have been paid. Among the services rendered by him and his office are the posting of the homestead, advertisements in various newspapers, including ads which separately listed the homestead. The homestead was shown to approximately 40 persons, another property to about 15 to 18 persons and a third property was shown to roughly 18 to 20 parties. Of considerable importance is the evidence that

*bee's Estate*, 161 Pa.Super. 31, 53 A.2d 864 (1947) (real estate broker who caused sale of estate property entitled to commission from estate); *Casely's Estate*, 23 Pa.Super. 646 (1903) (fees for executor and real estate agent allowed). *See also In re Faust's Estate*, 364 Pa. 529, 73 A.2d 369 (1950) (in administration of estate, executor can hire counsel).

others in the Luther Getz office were the salesmen of two of the three properties.

Trial Court Opinion at 17–18.

Luther A. Getz, through the efforts of his employees and himself, helped sell several pieces of real estate. He expended time, effort, and money in trying to sell the properties. When he personally made the sales, he charged the estate a five percent commission. When an associate procured the sale, he would charge seven percent and share equally in the seven percent with his associate. The commissions to which objections were filed total $12,650.00.[5]

As the trial court stated, appellant did not allege that the fees paid were unreasonable for real estate broker services. We hold that the Orphans' Court did not err in finding that Luther Getz provided beneficial services as a realtor beyond the services he provided as an executor. Therefore, we reject appellant's third argument.

Appellant's fourth and final argument is that the executors should be surcharged for the estate's payments of attorney fees to the estate's attorney, Roger Nanovic. We cannot agree.

> The test for determining the appropriateness of a fee for legal services in an estate is reasonableness. *Dorsett v. Hughes*, 353 Pa.Super. 129, 509 A.2d 369 (1986). Primarily, the responsibility for passing upon the reasonableness of counsel fee rests with the auditing judge. *Thompson Estate*, 426 Pa. 270, 232 A.2d 625 (1967). The determination that a fee is reasonable is within the sound discretion of the hearing judge whose decision will not be reversed in the absence of a clear error or abuse of discretion. *Lychos Estate*, 323 Pa.Super. 74, 470 A.2d 136 (1983); *Wanamaker Estate*, 314 Pa.Super. 177, 460 A.2d 824 (1983).
>
> In determining the reasonableness of counsel fee, the court must consider many factors including the amount of work

---

5. The commissions were: $4,500.00 on "the Homestead," the home of the testatrix and her husband; $1,050.00 on the "Kiraly property;" $2,100.00 on the sale of 13 acres of land; and $5,000.00 on the sale of 207 acres of land.

performed, the character of the services rendered, the difficulty of the problems, the amount of money or value of the property in question, the degree of responsibility involved, the professional skill and the standing of the attorney in his profession, and the ability of the client to pay a reasonable fee. *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968).

*In re Estate of Burch*, 402 Pa.Super. 314, 317–18, 586 A.2d 986, 987–88 (1991).

The Orphans' Court found that Mr. Nanovic's services benefited the estate and that he "has performed in a maze of complexities toward the end that a meaningful settlement of the estate is at hand." Trial Court Opinion at 21. Moreover, appellant does not question the value of his services or the reasonableness of his charges.

■ However, appellant maintains that the 1976 agreement between the four remaining executors and the estate's previous attorney, George Shutack, precludes any remuneration for Attorney Nanovic. Attorney Nanovic was not a party to the 1976 contingent fee agreement; only the executors and Attorney Shutack agreed to those terms. Clearly, the purpose of the agreement was to reduce to writing the parties' understanding that Mr. Shutack would be paid a percentage of the proceeds from the assets as they were sold. The contract provided a set payment for work done by Shutack, not for all the work to be done for the estate by whomever. *See Cumberland–Perry, Etc. v. Bogar and Bink*, 261 Pa.Super. 350, 354, 396 A.2d 433, 435 (1978) ("It is basic principle that a contract cannot legally bind persons not party thereto.").

Attorney Nanovic was not bound by the 1976 agreement with regard to Mr. Shutack's fee arrangement. Mr. Shutack served as attorney for the estate from 1957 through part of 1985, when he retired. Mr. Nanovic took over as counsel on October 15, 1985, and has continued to represent the estate through this appeal. Attorney Nanovic provided beneficial services for reasonable and fair compensation. Accordingly, the Orphans' Court did not err in refusing to surcharge the

executors for Attorney Nanovic's remuneration. Therefore, appellant's fourth argument fails.

Having concluded that the Orphans' Court did not err, we affirm its three orders of December 16, 1991.

Orders affirmed. Jurisdiction relinquished.