J-A20013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF FRANK W. ALBERT, LATE OF THE VILLAGE OF MORRISDALE, MORRIS TOWNSHIP, CLEARFIELD COUNTY, PENNSYLVANIA DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANNA MAE PEZZULLA, EXECUTRIX OF THE ESTATE OF FRANK W. ALBERT | No. 1550 WDA 2015 |

Appeal from the Order August 6, 2015
In the Court of Common Pleas of Clearfield County
Orphans' Court at No(s): 72-238

BEFORE:  BOWES, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 22, 2017**

Anna Mae Pezzulla, in her capacity as executrix of the Estate of Frank W. Albert, has appealed from an orphans' court order that interpreted a clause in a will.  We affirm.

Frank W. Albert died testate on June 24, 1972.  His last will and testament dated November 23, 1968, was admitted to probate and letters testamentary were issued to Appellant and Mr. Albert's wife Alta Frances Albert, as co-executrixes.  The decedent was survived by his wife and three daughters, Appellant, Doris Eileen Early, and Cheryl Ann Albert.  The

decedent devised his residuary estate one-third to his wife Alta and two-thirds to be divided equally among his three daughters. The provision of the will at issue in this appeal was included after Mr. Albert's directions as to the distribution of his residuary estate. It stated, "In as much as I am the owner of several farms, it is my wish that my daughters and my wife operate said farms if it can be profitably done. If, however, the same cannot be profitably operated, it is my desire that said farms be sold and the proceeds divided as provided in this, my last will and testament." Last Will and Testament of Frank W. Albert, 11/23/68, at 1-2.

The inventory for the estate established that Mr. Albert owned the following realty: eight separate parcels of land in Morris Township with an overall acreage of 528.07, one plot of real estate in Decatur Township that consisted of 10.16 acres, and five different tracts of realty in Graham Township with an overall acreage of 258.81. Doris Eileen Early, one of Mr. Albert's daughters, died intestate in a vehicle accident in 1975, leaving behind her husband Stanley Myers as her sole heir. Mr. Myers succeeded to his wife's 2/9 interest in Mr. Albert's residuary estate. Alta Frances Albert also died, and she bequeathed her interest in her husband's estate, in equal shares, to her two grandchildren and two great-grandchildren. Appellant and Cheryl are the only beneficiaries under Mr. Albert's will who are still living. There are now five living beneficiaries who became entitled to distribution of the residuary estate following Mr. Albert's death.

From 1972 to the present day, over four decades, Appellant managed and controlled the fourteen parcels of land listed in the inventory. She did so under the language providing that decedent's wife and daughters were authorized to operate Mr. Albert's farms as long as they could do so profitably. During this period, three first and partial accounts were filed. After the filing of the third and partial account, Mr. Myers filed exceptions. Mr. Myers sought an end to Appellant's stewardship over the land in question and asked that the assets being managed by Appellant as executrix be distributed to the beneficiaries under the residuary clause in the will.

The accounts established the following. When Mr. Albert died, all of the land in question was farm land. Some parcels contained buildings being rented to other people, one tract contained an airplane landing strip and hangar, and some of the lots were wooded, untilled acreage. In 1972, Appellant sold all the decedent's farm equipment. The third and partial account covered thirty-seven years, 1975-2012, during which time Appellant operated and managed all of her father's real estate.

During the course of those years, Appellant received rental income, royalties from the extraction of natural gas, coal was mined, timber was sold, rental was received from the residential real estate, and some of the property was leased to farmers. Appellant derived income from the properties that was sufficient to pay for upkeep, taxes, and various expenses

associated with the estate's properties with the exception of one year, when Appellant had to sell a piece of land to maintain the other properties.

The orphans' court reviewed the third and partial account and conducted a hearing. Appellant conceded at the hearing that she was not conducting any farming operations on any of the parcels of realty. During ten of thirty-seven years covered by the third and partial account, no profits were realized from the operation of the various pieces of land, and the beneficiaries of Mr. Albert's estate received no distributions. During 2006-2007, Appellant had to sell a piece of land to cover upkeep and expenses.

Mr. Myers filed exceptions to the third and partial account. He contended that Appellant was no longer permitted to operate the land owned by Mr. Albert. He asserted various theories of relief: 1) Appellant was entrusted with stewardship only over Mr. Albert's farms, not all of his real estate; 2) the clause required that the farms be operated as farms, which was not occurring; 3) Appellant was not profitably operating the land; and 4) the will provided that Appellant was not permitted to control the land alone without any input from her two sisters and mother. Appellant countered that Mr. Albert's intent was that the estate remain open and that she continue to manage and oversee all of the land owned by Mr. Albert when he died, as long as she generated revenue from that real estate. She asserted that, even though the clause only mentioned decedent's farms, Mr. Albert,

when he used the term farm meant all of his real estate and not just the tracts of land that he was farming when he died.

After a hearing, the orphans' court rejected Appellant's positions. It noted that the record established that decedent owned farms as well as real estate that was not used to farm and that the language in the clause at issue provided that his daughters and wife could continue to operate his farms. The orphans' court found that this language covered only the decedent's farms and that the clause in question also required that the farms be operated as such. It also concluded that the land in question was not being operated profitably. The court granted Mr. Myers' exceptions and ordered that the administration of the estate be concluded and the estate assets distributed in accordance with the terms of the residuary clause.

This appeal followed.[1] On appeal, Appellant raises this contention: "Did the orphans['] court commit an abuse of discretion or a clear error of law in directing the termination of the business of the decedent's estate, contrary to the terms of the last will of decedent?" Appellant's brief at 4. Our standard of review of an orphans' court decree is deferential. ***In re Fiedler***, 132 A.3d 1010, 1018 (Pa.Super. 2016). When we review such a

---

[1] The order was appealable as of right under Pa.R.A.P. 342(a)(3) ("An appeal may be taken as of right from the following orders of the Orphans' Court Division . . . [a]n order interpreting a will or a document that forms the basis of a claim against an estate or trust[.]").

decree, this Court "must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." ***Id***. Of significance herein is that the orphans' court operates as the finder of fact and thus "determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." ***Id***. An orphans' court's "decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." ***Id***.

Appellant's attack on the orphans' court decision is two-fold. First, Appellant maintains there is nothing in the will requiring that the real estate be operated as a farm, and the court's decision to the contrary is erroneous. Appellant's brief at 12. As a subsidiary to this position, Appellant suggests that the only reason proffered by Mr. Myers to obtain closure of the estate is that enough time has passed and the estate should be concluded. Second, Appellant argues that she has profitably managed the property in question during the past forty-five years.

Initially, we examine the pertinent language of the will. It states, "In as much as I am the owner of **several farms**, it is my wish that my daughters and my wife **operate said farms** if it can be profitable done. If, however, the same cannot be profitably operated, it is my desire that said **farms** be sold and the proceeds divided as provided in this, my last will and testament." Last Will and Testament of Frank W. Albert, 11/23/68, at 1-2

- 6 -

(emphases added). The inventory of the estate established that the decedent owned fourteen separate pieces of real estate of varying acreage. The accounts proved that many of those pieces of land were not farms; they included property with buildings that were rented, including a parcel with an airstrip and hanger, and wooded, untillable land.

The law is clear that a testator's intent is the "the polestar in the construction of his will[.]" *Estate of Smertz*, 701 A.2d 268, 270 (Pa.Super. 1997). "To ascertain that intent," the Superior Court "must focus first on the precise wording of the will; we may only resort to general rules of construction if the testator's intent still remains uncertain." *Id*. In this case, the orphans' court observed, and we concur, that the term farm is clear and unambiguous and that only the land that Mr. Albert was farming was subject to the clause in question. *Cf. Estate of Getz*, 618 A.2d 456, 457 (Pa.Super. 1992) (emphasis added) (wherein the testator allowed the "executors, if they shall so elect, to continue and operate during the administration of our estate, any farming operation, **business or other enterprises** in which we are interested at the time of our death").

The orphans' court opined that the term at issue, farm, is completely free of any ambiguity. It further noted that, "Nothing in the will suggests that Mr. Albert intended the word 'farm' to mean anything other than the common usage of the word namely 'an area of land and its buildings used for growing crops and rearing animals.'" Trial Court Opinion, 8/7/15, at 4.

(quoting Compact Oxford English Dictionary, 361 (Oxford University Press 2005). The record irrefutably establishes that some of the fourteen parcels of land owned by Mr. Albert when he died were farms while other tracts were not used as farms. Under the clear and unambiguous language of the will, Appellant, her sisters, and her mother, were entitled to operate only the farms that Mr. Albert owned and not all of his real property, regardless of whether it was a farm.

In an attempt to overcome the clear import of the language in question, Appellant testified at the hearing that, by the term "farm," Mr. Albert actually meant all of his real estate. The orphans' court acknowledged that Appellant's assertion was that the testator used the term farm to encompass all of his realty, regardless of whether it actually was a farm. It rejected that position because it required the review of extrinsic evidence that "the Court cannot properly consider when discerning the testator's intent from an unambiguous will." *Id*. at 5.

The orphans' court nevertheless did weigh Appellant's testimony. It stated that, "assuming *arguendo*, that the Court were to consider [Appellant's] contention that the testator intended farm to mean 'the whole conglomeration of what he owned,' the Court remains unconvinced." *Id*. The orphans' court observed that, in the residuary clause of the will, the testator devised "'[a]ll the rest, residue and remainder of my estate whether the same be real, personal or mixed' to his wife and daughters[.]" *Id*. Then,

in the clause under construction herein, Mr. Albert decided to "distinguish the farms separately." *Id.*

In addition, the orphans' court rejected Appellant's testimony that her father used the term farm to encompass all of his real estate. It stated that it found "no **credible reason** to believe that the Testator defined the word" farm other than in accord with its common and ordinary meaning. *Id*. (emphasis added). By stating that there was no credible reason to believe that Mr. Albert meant to use the term "farm" to mean anything other than a farm, the orphans' court was discrediting Appellant's proposition that her father gave a tortured interpretation to the word "farm" by using it to mean any real estate that he owned. As the sole arbiter of credibility in this action, the orphans' court was free to reject Appellant's position that Mr. Albert meant all of his real estate rather than just his farms when he used the word "farm" in the clause in question. In accordance with our above-elucidated standard of review, we are bound by that credibility determination.

In light of our affirmance of the determination that Mr. Albert meant his farms, we necessarily affirm the orphans' court's concomitant conclusion that Appellant was not operating the land in accordance with the terms of will because she was not farming the tracts under her control. The will expressly states that, "it is my wish that my daughters and my wife **operate said farms** if it can be profitably done." Last Will and Testament of Frank W.

Albert, 11/23/68, at 1 (emphasis added). This wording evidences Mr. Albert's intent that his wife and daughters and wife operate the farms as such.

The record establishes that none of the land is now being operated by Appellant as a farm.[2] She admittedly sold all the farm equipment in 1972, as established by the second and partial account herein. At the hearing, Appellant also acknowledged that she does not personally engage in any farming activity. Only one piece of Mr. Albert's land is being used as a farm, but it is being rented to people who do the actual farming. We concur that Mr. Albert's intent was "that his daughters and his now deceased wife operate the farms themselves, not rent the land out to others to farm." Trial Court Opinion, 8/7/15, at 6. Thus, the court's decision rested firmly upon a valid interpretation of the language of the will. Appellant was permitted under the clause at issue to operate only what were decedent's farms and had to operate the farms as such.

The orphans' court did observe that under Appellant's position, the estate could remain open indefinitely, to the detriment of the living residuary-clause beneficiaries. *Id*. ("under [Appellant's] interpretation of the will the Estate may never close. The Estate may drag on in perpetuity

_____

[2] We also observe that Appellant never attempted to establish which of the fourteen pieces of real estate in her father's estate were being operated as farms when Mr. Albert died.

as long as the totality of the Decedent's properties have an income that exceeds its expenses"). However, this statement in the opinion was merely an observation that was made after the orphans' court conducted a cogent analysis of the terms of the will at issue and after it properly applied the pertinent law. Contrary to Appellant's position, the statement in question was not a basis for the court's ruling that Appellant must wind up her administration of the estate and distribute it to the present beneficiaries under the residuary clause.

We likewise reject Appellant's second position, which is that the "lands have been managed effectively, profitably, and responsibly" since 1972. Appellant's brief at 12. The third and partial account established that in ten of the thirty-seven years from 1975 to 2012, there were no distributions and thus no profit from what constitutes a significant amount of real estate. Although the third and partial account listed a $1,000 distribution in 2006 and 2007, it also established that a parcel of land was sold that year for approximately $30,000. Hence, in 2006-2007, Appellant operated the land at a loss, having to sell a tract in order to meet her operating expenses. An asset cannot be considered profitable when it generates no income over twenty-five percent of the time, and operates at a significant loss during one year. We thus affirm the orphans' court alternative basis for its conclusion that Appellant is no longer entitled to operate the land and must end her administration of the estate and distribute its assets to the beneficiaries of

- 11 -

the residuary clause. That basis was that the land was not being operated profitably.

Mr. Myers makes another valid point in his brief. The will clearly states that the farms were to be operated by the decedent's wife and his three daughters. This language obviously was intended to permit Appellant, her mother, and her two sisters, acting in concert, to continue to farm the land that Mr. Albert was farming when he died. Appellant's mother and one of her sisters are now deceased, and Appellant is managing all of the estate's assets by herself in her capacity as executrix. The language in the will was not intended to create a fiat by which Appellant could retain control of all of her father's estate assets for over four decades to the exclusion of any input from five of the people who are now beneficiaries of Mr. Albert's estate. For all of the foregoing reasons, we find that the orphans' court did not abuse its discretion and that it properly applied the controlling law.

Order affirmed.

Judge Musmanno joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017