T.C. Memo. 2002-186

UNITED STATES TAX COURT


ESTATE OF FRANCES C. GLOVER, a.k.a. FRANCES C. CLOUD, DECEASED,
KEVIN HOLLERAN AND WILMINGTON TRUST COMPANY,
ADMINISTRATORS PRO TEM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9054-95.              Filed August 2, 2002.


<u>Mark L. Tunnell</u>, for petitioner.

<u>Gerald A. Thorpe</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, <u>Judge</u>:  Pursuant to a statutory notice of deficiency dated March 2, 1995, respondent determined a $698,191 deficiency in the estate tax of the Estate of Frances C. Glover (hereinafter, Frances C. Glover is referred to as decedent and her estate as decedent's estate).  On April 21, 1999, the Court granted

respondent's motion for leave to file amendment to answer and to claim increased deficiency asserting an increased deficiency in estate tax of $2,235,455.49.

In the amendment to answer, respondent raised as an issue whether a potential malpractice claim decedent possessed against the law firm of Eckell, Sparks, Monte, Auerback & Moses (Eckell, Sparks) constituted an interest in property includable in decedent's gross estate, and if so, the value of that claim. As detailed infra, on March 13, 1995 (more than 4 years after decedent's death), the administrators pro tem. and the residuary beneficiaries of decedent's estate filed an action against Eckell, Sparks. The plaintiffs' claims in that action included, among others, a claim related to malpractice committed in handling decedent's affairs during her life and a claim for a return of attorney's fees of $247,500 paid by the estate for services rendered during the administration of the estate. In April 2000, the Court of Common Pleas of Chester County, Pennsylvania, Orphans' Court Division (the Orphans' Court) ordered Eckell, Sparks to return the $247,500 of attorney's fees paid by the estate. In early May 2000, the administrators pro tem., the Glovers, and Eckell, Sparks entered into a settlement agreement, pursuant to which Eckell, Sparks agreed to pay the administrators pro tem. and the residuary beneficiaries $750,000 for the release of all their claims against the law firm.

The parties filed a stipulation of settled issues with this Court in which they were able to resolve most of their differences.[1]  In addition, in the stipulation of settled issues,

---

[1]  Pursuant to the stipulation of settled issues, the parties agreed to the following settlement terms:

a.  The value of Folly Hill Farm reported on the estate tax return should be reduced by $77,447 to reflect the cost of an environmental cleanup;

b.  The value of the Woolworth stock reported on the estate tax return should be increased by $86,941;

c.  The taxable estate reported on the estate tax return should be increased by $5,000 to reflect a general power of appointment decedent held in the Frances G.C. Glover Trust on the date of death;

d.  The taxable estate reported on the estate tax return should be increased by $48,500 to reflect the value of a claim decedent had against Madelyn M. Hurley on the date of death;

e.  The taxable estate reported on the estate tax return should be increased by $20,021 to reflect the value of a claim decedent had against Charles W. Hurley on the date of death;

f.  The taxable estate reported on the estate tax return should be increased by $133,712 to reflect a Federal income tax refund for 1990 to which decedent was entitled on the date of death;

g.  Decedent's estate will be allowed a deduction for administrator's commissions and other miscellaneous administrative expenses paid by decedent's estate to the extent approved by a final order of the Court of Common Pleas of Chester County, Pennsylvania, Orphans' Court Division (the Orphans' Court).

h.  Decedent's estate will be allowed a deduction for attorney's fees paid by decedent's estate (excluding attorney's fees paid to attorneys representing the

(continued...)

decedent's estate and respondent agreed to use the $750,000 settlement amount as "the starting point" for determining the value of decedent's interest in the malpractice claim against Eckell, Sparks. The parties further agreed (1) to reduce the $750,000 settlement proceeds by $203,659, representing the legal costs incurred in prosecuting the malpractice claim, (2) that decedent's estate had the "right to argue" that the $750,000 figure should be further reduced (a) by $247,000[2] representing the claim the estate asserted for the return of attorney's fees and (b) for an additional portion of the amount recovered from Eckell, Sparks "because it is property belonging to the residuary beneficiaries (the Glovers) and is not property of the estate", and (3) that the net value of decedent's interest in the malpractice claim at the date of settlement (after all allowable reductions) should be multiplied by 0.438233 to arrive at its present value as of the date of decedent's death.

---

[1](...continued)
residuary beneficiaries and payment to one of the residuary beneficiaries, the deductibility of such fees and payments are at issue in this case) to the extent approved by a final order of the Orphans' Court.

i. Decedent's estate should be allowed a deduction, not to exceed $1 million, for a charitable bequest to the University of Pennsylvania to the extent paid.

[2] The actual amount of attorney's fees ordered returned was $247,500.

The issues remaining[3] for us to decide are as follows:

1.    Whether any portion of the $750,000 settlement Eckell, Sparks paid to the administrators pro tem. and the residuary beneficiaries of decedent's estate (the Glovers) should be allocated to (a) the value of the estate's claim for the $247,500 of legal fees that the Orphans' Court ordered Eckell, Sparks to return to decedent's estate and/or (b) to the value of the claims the Glovers made against Eckell, Sparks, with the consequences that the amount of any such allocation is not included in the value of decedent's claim against Eckell, Sparks on the date of her death.

2.    If we determine that no portion of the $750,000 settlement is allocable to the Glovers' claims, then whether that portion (60 percent) of the $750,000 Eckell, Sparks settlement that was distributed to the Glovers is a deductible expense in determining decedent's taxable estate.

---

[3]    In its answering brief, decedent's estate:

a.    Conceded that attorney's fees of $247,500 paid to the law firm of Eckell, Sparks, Monte, Auerback & Moses that the Orphans' Court ordered be returned to decedent's estate are not deductible as administrative expenses pursuant to sec. 2053(a)(2).

b.    Failed to address and, therefore, is deemed to have conceded that commission of $250,000 paid to Madelyn M. Hurley, the original executrix of decedent's estate, is not deductible as an administrative expense pursuant to sec. 2053(a)(2) nor deductible as a theft loss pursuant to sec. 2054.

3.    Whether payments made by decedent's estate to attorneys representing the Glovers, and payments, if any, to be made to Mr. Glover (one of the residuary beneficiaries) for time and money spent in discovering the misappropriation of decedent's assets by Ms. Hurley and Mr. Ross (persons to whom decedent entrusted all of her financial affairs) are deductible either as administrative expenses (pursuant to section 2053(a)(2)) or as claims against the estate (pursuant to section 2053(a)(3)) in determining decedent's taxable estate.[4]

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.  The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.

### Background

On the date of her death, June 3, 1991, decedent resided in Pennsylvania.  Kevin Holleran and the Wilmington Trust Co. were duly appointed coadministrators pro tem. of decedent's estate.  At the time the petition in this case was filed, Mr. Holleran resided in Pennsylvania, and the principal place of business of Wilmington Trust Co. was in Delaware.

---

[4]    All section references are to the Internal Revenue Code as amended and in effect on the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Decedent

Decedent inherited substantial wealth from her parents and a great uncle. Her lifestyle was not lavish; she lived comfortably on the income and dividends from her investments.

At an unspecified date in the early 1960s, decedent met Madelyn Hurley (also known as Lynn Hurley); they thereafter developed a close friendship. Initially, Ms. Hurley began helping decedent by performing secretarial and administrative chores (such as sorting mail, paying bills, and depositing checks); she was not compensated for these services. At an unspecified date in early 1980, decedent engaged Richard Ross to serve as her financial adviser. Thereafter, Mr. Ross and Ms. Hurley worked together, and decedent began compensating Ms. Hurley for her services.

On June 4, 1984, decedent suffered a stroke that left her partially paralyzed. After the stroke, decedent entrusted all of her financial affairs to Mr. Ross and Ms. Hurley. At that time, decedent's assets, which consisted primarily of real estate, stocks, and bonds, were worth more than $13 million.

Mr. Ross and Ms. Hurley opened three checking accounts into which they deposited decedent's funds and over which they had signature authority. Mr. Ross and Ms. Hurley also held powers of attorney that allowed them to conduct transactions through decedent's brokerage accounts.

At an unspecified date in 1987, Mr. Ross (until his death in 1989) and Ms. Hurley began to misappropriate decedent's funds. By the date of decedent's death in 1991, they had misappropriated approximately $1.6 million. Mr. Ross and Ms. Hurley used these funds to pay their personal expenses and to invest in business ventures. They retained Eckell, Sparks to represent them in some of these business ventures.

Decedent's Will

In June 1989, Mr. Ross and Ms. Hurley engaged Eckell, Sparks to draft a new will (the 1989 will) for decedent. Before this time, Eckell, Sparks had not performed legal services for decedent. Eckell, Sparks did not send decedent an "engagement letter" acknowledging their representation of her or specifying the fee arrangement. Nor did any attorney from Eckell, Sparks meet or communicate with decedent. Rather, in preparing the 1989 will for decedent, Joseph Monte of Eckell, Sparks used decedent's prior will (the old will), which was provided by Mr. Ross and Ms. Hurley, and relied upon information provided by Mr. Ross and Ms. Hurley.

Decedent had a longtime companion, Edward H. Cloud, whom she married on June 13, 1990. She also had one brother, Rolfe E. Glover III, who had three children, Rolfe E. Glover IV, Gordon F. Glover, and Katherine C. Glover. (Reference to Mr. Glover is to Rolfe E. Glover IV, and reference to the Glovers is to the three

children.)  The Glovers were the residuary beneficiaries under the old will as well as the 1989 will.

The 1989 will provided for certain specific bequests, including a bequest of $50,000 to Mr. Ross and a bequest of $1 million to the University of Pennsylvania.[5]

Decedent owned a mobile home (valued at approximately $250,000) which was to be held in trust and rented for $1 per year to Mr. Cloud for so long as he desired.  She also owned a farm residence (known as Folly Hill) which was to be held in trust for the benefit of Mr. Cloud, giving him the right to occupy the farm rent free for life.  Upon Mr. Cloud's death, the farm went to a residuary trust for the benefit of the Glovers.

The 1989 will created a residuary trust, from which the trustee was to pay so much of the income and principal as necessary to pay Mr. Cloud's living expenses during his life. Upon Mr. Cloud's death, the assets of the residuary trust, including the farm, were to be distributed to the Glovers.

Mr. Ross was named as the executor/trustee of the 1989 will. Ms. Hurley was named as the contingent executrix/trustee in the event Mr. Ross failed to qualify or ceased to act.

---

[5]    The bequest was to establish and perpetuate the Frances Cheney Glover Endowment Fund to be used for the support of academic development of veterinary staff and teaching of veterinary students.

Mr. Ross and Ms. Hurley delivered the 1989 will to decedent. Ms. Hurley penned the following interlineations on the will: Ms. Hurley was to receive a $50,000 bequest, and Mr. Cloud's nieces and nephew (the Pierces), rather than the Glovers, were to receive the farm upon Mr. Cloud's death. After initialing the aforementioned interlineations, decedent signed the will on June 29, 1989. Present at that time were Mr. Cloud, Mr. Ross, Ms. Hurley, and Jayne Kirkpatrick (a friend of decedent). The signed will was then taken by Mr. Ross and Ms. Hurley to Ms. Hurley's home where Ms. Hurley's mother (Nell Meding) and Ms. Hurley's secretary (Karen Benner) signed the 1989 will as witnesses. Upon obtaining these signatures, Mr. Ross and Ms. Hurley delivered the executed 1989 will to Eckell, Sparks, where the signatures were improperly notarized. The 1989 will was then placed in a safe at the office of Eckell, Sparks. Subsequently, Eckell, Sparks sent the original and a copy of the 1989 will to Ms. Hurley where they remained until decedent's death.

On August 24, 1989, Mr. Ross died. Ms. Hurley was the executrix and sole beneficiary of Mr. Ross's estate.

Antenuptial Agreement

In early 1990, decedent and Mr. Cloud decided to marry. On May 17, 1990, Ms. Hurley retained Eckell, Sparks to draft an antenuptial agreement for decedent and Mr. Cloud. The antenuptial agreement provided that decedent would leave Mr. Cloud a cash

bequest of $2 million in her will. Eckell, Sparks mailed the antenuptial agreement to Ms. Hurley. Eckell, Sparks did not recommend to decedent that, before the execution of the antenuptial agreement, she or independent counsel consult with her accountant, George Skinner, to obtain a statement of her assets. On May 22, 1990, decedent and Mr. Cloud executed the antenuptial agreement. Ms. Hurley kept the executed antenuptial agreement until she sent it to Eckell, Sparks in the spring of 1991.

Revised Will

On April 2, 1991, Ms. Hurley met with a member of Eckell, Sparks to discuss the revision of decedent's will. The revised will was to include the $2 million bequest to Mr. Cloud, reduce the bequest to the University of Pennsylvania to $250,000, and eliminate the $50,000 bequest to Ms. Hurley. The revised will was sent to Ms. Hurley on April 2, 1991. Ms. Hurley, however, never gave the revised will to decedent to execute.

Decedent died on June 3, 1991.

Decedent's Estate

All of the beneficiaries under the 1989 will, except Mr. Ross, were alive when decedent died. Since decedent's death, Mr. Cloud and Ms. Kirkpatrick have died.

On June 7, 1991, Ms. Hurley submitted the 1989 will to the Register of Wills of Chester County, Pennsylvania (register of wills) for probate. The register of wills admitted the 1989 will

(with the interlineations) to probate and granted Letters Testamentary to Ms. Hurley.

Ms. Hurley engaged Eckell, Sparks to represent her as executrix for the estate. Soon thereafter, Mr. Cloud filed a petition with the Orphans' Court, seeking to enforce the antenuptial agreement. Without opposition, the antenuptial agreement was upheld by the Orphans' Court.

Decedent's Income Tax Returns

Shortly after decedent's death, Eckell, Sparks learned that decedent had not filed income tax returns for the 4 years preceding her death. In August 1991, Eckell, Sparks obtained from decedent's accountant, Mr. Skinner, his files relating to decedent's affairs. Those files revealed that Mr. Skinner (1) had filed with the Internal Revenue Service requests for extensions of time for filing decedent's tax returns, (2) had partially prepared tax returns for the years in question, based upon information available to him from the preparation and filing of previous tax returns for decedent (and before Mr. Ross and Ms. Hurley took over as financial advisers), (3) had over the 4-year period asked Mr. Ross and Ms. Hurley for information needed to complete the tax returns, and (4) was unable to document decedent's assets or liabilities and resulting net worth because the information was not available to

him.   Mr. Skinner informed Eckell, Sparks that Mr. Ross and Ms. Hurley, as decedent's financial advisers, were responsible for the failure to file decedent's tax returns.

Contested Will

On June 9, 1992, the Glovers, through their attorneys, Lamb, Windle & McErlane (Lamb, Windle), filed an appeal to the Orphans' Court, challenging the probate of the 1989 will.   The Glovers claimed that, after decedent executed the 1989 will on June 29, 1989, the will had been altered by undated handwritten interlineations and cancellations but had not been republished or properly reexecuted by decedent.

After a hearing on the matter, the Orphans' Court held that the register of wills had incorrectly decided that the 1989 will had been properly attested to and notarized.   On November 5, 1992, the Orphans' Court entered a decree vacating the June 7, 1991, probate of the 1989 will and remanding the matter to the register of wills.

On December 2, 1992, the Glovers filed a caveat with the register of wills, claiming that the 1989 will was invalid for the following reasons:

    1.    Execution of the document was obtained by undue influence exerted by A. Richard Ross and Lynn Hurley and others who were in a confidential relationship with decedent;

    2.    Lynn Hurley is unfit to be entrusted with the administration of the estate * * * because of her failure to perform the duties entrusted to her by decedent and

mismanagement of decedent's affairs, all of which resulted in financial loss to decedent, placing Ms. Hurley in a conflict of interest with the estate of decedent, which estate has a cause of action against Ms. Hurley for these breaches of duty and losses; * * *

The register of wills granted nonsuit against the Glovers and denied and dismissed the caveat. On February 1, 1993, the register of wills again admitted the 1989 will to probate and granted letters testamentary to Ms. Hurley.

On April 29, 1993, the Glovers filed a petition with the Orphans' Court seeking the removal of Ms. Hurley as executrix and the appointment of the Glovers as coexecutors of the will. In addition, the petition requested that Ms. Hurley (1) forfeit her executrix's commission, (2) be prohibited from transferring any of her personal assets outside of the ordinary course of her daily life without the permission of the court, and (3) be required to file with the court a schedule listing (a) all of her personal assets, (b) all transfers from the estate to her, Mr. Ross, and several entities in which they together had an interest, and (c) any outstanding loans from decedent's or the estate's accounts made during the relevant period.

In the petition, the Glovers asserted that they had examined several of decedent's bank and brokerage accounts that were controlled by Ms. Hurley and Mr. Ross and that their examination revealed that large sums of money deposited into those accounts had been used for the personal benefit of Ms. Hurley and Mr. Ross. The

Glovers maintained that, even if those transfers were treated as loans (as Ms. Hurley contended), Ms. Hurley, as executrix of the estate, had a conflict of interest because she had made no attempt to recoup the funds she took from decedent's accounts. Moreover, the Glovers alleged that Ms. Hurley had actively and fraudulently attempted to conceal the indebtedness in order to further her own interests.

On May 3, 1993, the Orphans' Court entered a preliminary decree directing Ms. Hurley to show cause why she should not be removed as executrix of decedent's estate. The court also issued a temporary restraining order against Ms. Hurley, enjoining her from (1) participating in all decisions regarding the administration of the estate, (2) participating in all decisions regarding the assets of the estate, (3) engaging or paying counsel to represent the estate, (4) claiming any compensation as executrix, (5) doing any other act as executrix, and (6) transferring any of her personal assets outside the ordinary course of her daily life without permission of the court. The restraining order required Ms. Hurley to file with the court a schedule listing all of her personal assets and an accounting of all transfers of money or property from decedent's bank accounts or from the estate during the relevant periods.

On June 22, 1993, the Orphans' Court entered a decree removing Ms. Hurley as executrix and appointing Kevin Holleran (an attorney

specializing in estate administration) and the Wilmington Trust Co. as administrators pro tem. Before Ms. Hurley was removed as executrix, she paid herself an executrix's commission of $250,000 and a legacy of $50,000. In addition, she paid attorney's fees totaling $247,500 to Eckell, Sparks.

After being appointed by the Orphans' Court, Mr. Holleran conferred with Mr. Glover and the Glovers' attorneys at the offices of Lamb, Windle. Mr. Holleran reviewed Lamb, Windle files relating to decedent's affairs. The Lamb, Windle files revealed that most of decedent's records had been destroyed shortly after her death.

Mr. Glover expended time and money investigating decedent's estate. He subpoenaed and obtained records from the financial institutions with which decedent dealt. The records were voluminous. There were pages of photocopies of checks and statements, diagrams, and charts. It took approximately 1-1/2 years from the date of decedent's death to put together the evidence which was the foundation of the Glovers' petition to have Ms. Hurley removed. Mr. Holleran believed that the estate benefited significantly from the information Mr. Glover gathered through the discovery process in the actions brought by the Glovers to contest the will and to remove Ms. Hurley.

On July 30, 1993, the administrators pro tem. filed a civil action against Ms. Hurley in the Court of Common Pleas, Chester

County, Pennsylvania (the court of common pleas), seeking damages for fraudulent conversion (count I), unjust enrichment (count II), and breach of fiduciary duty (count III). The complaint alleged that Ms. Hurley and Mr. Ross misappropriated up to $2.5 million from decedent.

On October 6, 1993, the Glovers filed a petition with the Orphans' Court appealing the decision of the register of wills to probate the 1989 will. The Glovers argued that the 1989 will should not have been probated for the following reasons: (1) Ms. Hurley and Mr. Ross fraudulently induced decedent to sign the will; (2) Ms. Hurley and Mr. Ross exercised undue influence over decedent in connection with the will; (3) because of decedent's physical and mental state, decedent did not have the capacity to understand the provisions of the will; and (4) decedent was unaware of several significant facts (namely, the misappropriation by Ms. Hurley and Mr. Ross) which would have changed the dispositions decedent made in her will.

The civil action filed by the administrators pro tem. and the Glovers' appeal were consolidated for trial and opinion in the Orphans' Court Division of the court of common pleas on November 19, 1993.

On April 5, 1994, Ms. Hurley filed her account of the estate with the Orphans' Court. On April 6, 1994, the administrators pro tem. filed objections to Ms. Hurley's account. The administrators

pro tem., among other things, objected to Ms. Hurley's executrix's commission ($250,000) and the attorney's fees paid to Eckell, Sparks ($247,500). Further, they requested that Ms. Hurley and Eckell, Sparks be surcharged for the $125,000 they alleged Mr. Glover spent on attorney's fees while uncovering the acts of concealment, obstruction, and malfeasance by Ms. Hurley and Eckell, Sparks. A hearing on the objections was deferred pending the outcome of the civil action.

On November 2, 1994, the Orphans' Court issued an opinion and decree nisi dismissing the Glovers' appeal. The opinion concluded (1) that decedent was of a sound mind and possessed testamentary capacity at the time of the execution of the 1989 will, and (2) that the 1989 will was not the result of undue influence or fraud. Consequently, the court found that the 1989 will was valid and properly admitted to probate. However, the Orphans' Court entered a judgment against Ms. Hurley and in favor of the administrators pro tem. for $1,383,603.32 ($1,058,603.32 for restitution to decedent's estate for breach of fiduciary duty owed, and $325,000 for interest on income tax and tax penalties, as a consequence of her failure to turn over information to decedent's accountant needed to file timely tax returns and to make tax payments).

On November 15, 1994, the Glovers filed exceptions to the Orphans' Court's decree, requesting that the court change and/or modify its decree to find (1) that the 1989 will was invalid for

lack of due execution (i.e., it was a product of fraud, undue influence, and lack of capacity); (2) that the interlineations were invalid for lack of due execution; (3) that all fiduciary and beneficial provisions in favor of Ms. Hurley were invalid and should be stricken; and (4) that the appeal from probate be sustained.

On February 9, 1995, the en banc court of common pleas of Chester, County, Pennsylvania, Orphans' Court Division, entered an opinion and order (the en banc court decision) rejecting the arguments made in the exceptions filed by the Glovers and made its decree final, upholding the validity of the 1989 will by decedent.[6]

On March 6, 1995, the Glovers appealed the en banc court decision to the Superior Court of Pennsylvania. On January 11, 1996, the superior court filed its judgment, In re Estate of Glover, 669 A.2d 1011 (Pa. Super. Ct. 1996), affirming in part and reversing in part the en banc court decision. The superior court sustained the en banc court decision that the 1989 will was valid; however, it reversed the Orphans' Court's determination with

---

[6] On Dec. 9, 1994, Ms. Hurley filed a petition for relief under ch. 11 with the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. The administrators pro tem. filed a motion to dismiss pursuant to 11 U.S.C. sec. 1112(b) against Ms. Hurley citing "bad faith". After 5 months of litigation, the bankruptcy court dismissed Ms. Hurley's case "for cause" under 11 U.S.C. sec. 1112(b). Ms. Hurley appealed that decision to the U.S. District Court for the Eastern District of Pennsylvania, but in June 1995, she withdrew her appeal.

respect to the validity of the $50,000 legacy to Ms. Hurley, finding that the legacy was induced by fraud.[7]

On April 17, 1996, the administrators pro tem. and Ms. Hurley entered into a settlement agreement which disposed of all claims possessed by the estate for acts committed by Ms. Hurley on or before June 1, 1989.

On March 26, 1999, the Orphans' Court entered an opinion and decree dismissing the renewed objections filed by the administrators pro tem. with respect to Ms. Hurley's account of the estate on the ground that those objections were disposed of in the prior proceeding and thus barred under the doctrine of res judicata. The administrators pro tem. then asked the superior court for permission to appeal the Orphans' Court's dismissal of their renewed objections to Ms. Hurley's first and final account. Their request was denied on June 15, 1999.

Suit Against Eckell, Sparks

On March 13, 1995, the administrators pro tem. and the Glovers (referred to collectively as the plaintiffs) filed an action in the court of commons pleas against Eckell, Sparks seeking damages for the actions and conduct of the law firm over the 4-year period from June of 1989 to June of 1993. The plaintiffs retained the law firm

---

[7]     On Feb. 6, 1996, the Glovers filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, appealing the superior court's Jan. 11, 1996, judgment. On Jan. 16, 1997, the Supreme Court denied the Glovers' appeal.

of Fell & Spaulding to represent them in the action on a contingency-fee basis. In their complaint, the plaintiffs sought (1) compensatory damages in the sum of $3.7 million, together with interest and costs for malpractice committed by Eckell, Sparks in connection with the drafting of the 1989 will and the antenuptial agreement (count I); (2) the sum of $340,270, together with interest and costs for attorney's fees incurred by the Glovers in contesting the 1989 will (count II); (3) compensatory damages in the form of reimbursement of the executrix's commissions, bequests to Ms. Hurley, and Eckell, Sparks's attorney's fees in the amount of $547,500, together with interest and costs for malpractice committed by Eckell, Sparks while representing decedent's estate (count III); (4) $857,000, together with treble damages, costs, and reasonable attorney's fees, for conduct by Eckell, Sparks that violated the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) (count IV); and (5) punitive damages, alleging that Eckell, Sparks's conduct was "outrageous" and amounted to a "gross and reckless disregard of the probable consequences and the harm being inflicted on the Plaintiffs herein" (count V).

On August 8, 1995, the Glovers and the administrators pro tem. entered into an agreement to provide a method for allocating any amount recovered from the lawsuit against Eckell, Sparks, as well

as for allocating expenses in prosecuting the lawsuit.[8] The parties agreed that the Glovers would receive 60 percent of any recovery and would be responsible for 60 percent of the litigation expenses. The estate would receive the remaining 40 percent of any recovery and would be responsible for 40 percent of the litigation expenses.

On November 8, 1995, the court of common pleas entered an order: (1) Dismissing count I relating to the predeath malpractice claim, finding that (a) the complaint contained insufficient facts to establish that Eckell, Sparks played a role in wrongdoings committed by Mr. Ross and Ms. Hurley, and (b) the Glovers lacked standing to assert the predeath malpractice claim set forth in count I of the complaint; (2) dismissing count II, with prejudice, relating to the recovery of the attorney's fees the Glovers incurred in the will contest, finding that the Glovers lacked standing to assert the claim and that such a claim could not be asserted separately but rather was a component of the damages asserted in the main action (i.e., part of the damages resulting from Eckell, Sparks's malpractice); (3) dismissing count III relating to the postdeath negligence claim, finding there were insufficient facts to establish negligence on the part of Eckell,

---

[8] The agreement recites that the plaintiffs recognized that it would be extremely difficult to accurately and precisely allocate between the interests of the Glovers and the estate any moneys received by way of either a jury verdict or settlement in the lawsuit pending.

Sparks[9] and that the Glovers lacked standing to assert a claim for any malpractice that Eckell, Sparks may have committed while handling matters for the estate; (4) dismissing with prejudice count IV, finding that the administrators pro tem. lacked standing since they did not allege conduct covered by RICO, and that the Glovers lacked standing to bring such an action under RICO against Eckell, Sparks; and (5) dismissing with prejudice count V, finding that a claim for punitive damages was not a separate cause of action and that the plaintiffs had not alleged sufficient facts to support their assertion that Eckell, Sparks's conduct was "outrageous". The plaintiffs appealed to the superior court.

The superior court affirmed the order of the lower court except with regard to the dismissal of the predeath malpractice claim by the administrators pro tem. against Eckell, Sparks. The superior court reversed and remanded the case for consideration of that claim.

On April 17, 2000, the Orphans' Court, sua sponte, raised the issue of the reasonableness of the compensation paid by the estate to Ms. Hurley and Eckell, Sparks. The Orphans' Court entered an opinion and decree requiring Ms. Hurley and Eckell, Sparks to repay the amounts they had received from decedent's estate.

---

[9] The court, however, granted the administrators pro tem. additional time to file an amended complaint to state adequate facts establishing breach of duty and causation in count III.

On April 24, 2000, a trial of the Eckell, Sparks case commenced in the court of common pleas. In early May 2000 the administrators pro tem., the Glovers, and Eckell, Sparks entered into a settlement whereby Eckell, Sparks agreed to pay $750,000 for the release of all claims asserted in both the civil action and the will contest. Total litigation costs of $203,659 were incurred in the action, resulting in a net recovery of $546,341.

<u>Attorney's Fees in Litigation of Decedent's Estate</u>

The law firm of Lamb, Windle represented the Glovers with respect to matters relating to decedent's estate. Lamb, Windle billed the Glovers $269,206; the estate paid the bill. Of the amount paid, $91,192 was for services performed before the administrators pro tem. were appointed, and $178,014 was for services performed after that appointment.

The law firm of Gawthrop, Greenwood & Halsted represented the administrators pro tem. on the matters regarding Ms. Hurley and Eckell, Sparks. A letter dated August 28, 2000, reflects attorney's fees of $206,024.27 related to the Hurley matter and $18,205.50 related to the Eckell, Sparks matter.

Mr. Glover was actively involved in all litigation involving the estate. He maintained a detailed log on time spent on matters relating to the estate. Mr. Glover estimated that he spent 1,858 hours on estate matters. He was not employed by the administrators pro tem. or their law firm to assist them with estate matters.

OPINION

Section 2001(a) imposes an estate tax on the taxable estate of every decedent who is a citizen or resident of the United States. A decedent's taxable estate is determined by determining the value of the decedent's gross estate and by deducting therefrom those deductions provided for in sections 2053 through 2056. Sec. 2051. The gross estate of a decedent is determined by including the value (at the date of the decedent's death) of the decedent's interest in all property, real or personal, tangible or intangible, wherever situated. Secs. 2031(a), 2033.

In this case, one of the issues presented is determining (for purposes of determining the value of decedent's gross estate) the value of an interest which decedent possessed in a malpractice claim against Eckell, Sparks as of the date of her death. The parties have fashioned a formula for computing the value of that interest. They have agreed that the starting point in determining the value of that interest is a post mortem settlement, made almost 9 years after decedent's death. While normally we would not attach such importance, if any, to an event or transaction occurring almost 9 years after decedent's death in determining a date-of-death value for an asset owned by a decedent, in this case we do so because of the parties' stipulation.

Essentially, the parties have agreed that the $750,000 settlement represented the gross value as of the date of settlement

of all claims asserted against Eckell, Sparks. Accepting the parties' agreed $750,000 starting gross valuation for the claims, we are asked by the parties to determine whether any portion of the $750,000 starting point valuation is to be allocated to interests that decedent did not possess at the date of her death. Specifically, we decide whether any part of the $750,000 should be allocated to the value of (1) the estate's claim for the return of the $247,500[10] of legal fees paid by decedent's estate for services rendered in connection with the administration of decedent's estate and/or (2) claims of the residuary beneficiaries for malpractice; and if so, the amount thereof. We must further decide whether payments made by decedent's estate to attorneys representing the Glovers, as the residuary beneficiaries, and any possible future payment by the estate to Mr. Glover for his efforts in discovering the misappropriation of decedent's assets by Ms. Hurley and Mr. Ross are deductible either as administrative expenses pursuant to section 2053(a)(2) or as claims against the estate pursuant to section 2053(a)(3).

---

[10] We use the $247,500 amount because, as indicated supra note 2, the actual amount of fees paid and ordered returned to the estate was $247,500. Additionally, this greater amount is the amount used by both parties in their briefs.

Issue 1.  <u>Whether Portions of the $750,000 Settlement for Claims
Against Eckell, Sparks Are Attributable to the Value of
the Estate's Claim for the Return of Attorney's Fees That
the Orphans' Court Ordered Returned to Decedent's Estate
and/or Attributable to the Value of the Glovers' Claims
Against the Firm</u>

The administrators pro tem. and the Glovers filed a civil action against Eckell, Sparks, alleging that Eckell, Sparks (1) committed malpractice in connection with the drafting of decedent's will and antenuptial agreement (count I), as well as while representing decedent's estate (count III); (2) was liable for the attorney's fees incurred by the Glovers in contesting decedent's will (count II); (3) violated the RICO (count IV); and (4) was liable for punitive damages (count V). The lower court dismissed all counts either for lack of standing or for failure to allege sufficient facts to support these claims. On appeal, the superior court reversed and remanded the lower court's dismissal of the predeath malpractice claim against Eckell, Sparks by the administrators pro tem. The superior court affirmed the order of the lower court in all other respects.

On April 17, 2000, the Orphans' Court, sua sponte, entered an opinion and decree ordering Eckell, Sparks to repay the $247,500 the law firm had received from decedent's estate. The trial of the civil action brought by the administrators pro tem. against Eckell, Sparks commenced in April 2000. In early May 2000 the administrators pro tem., the Glovers, and Eckell, Sparks entered into a settlement whereby Eckell, Sparks agreed to pay $750,000 for

the release of all claims asserted in both the civil action and the will contest, which included the liability for the return of the $247,500 of attorney's fees.

Total litigation costs of $203,659 were incurred in the action, resulting in a net recovery of $546,341. Pursuant to the agreement between the estate and the Glovers, the estate's 40-percent portion of the net proceeds would be $218,536 (rounded). The estate argues that the Glovers' 60-percent share of the settlement and the $247,500 of attorney's fees that the Orphans' Court ordered Eckell, Sparks to return to the estate should be excluded from the $750,000 settlement that the parties stipulated represents the starting point for determining the value of decedent's interest in the malpractice claim on the date of her death.

For purposes of determining the value of a decedent's gross estate within the purview of section 2033, the term "property" encompasses choses in action. United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of Cal. v. Commissioner, 133 F.2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinion of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Cobb v. Commissioner, T.C. Memo. 1985-208; Estate of Aldrich v. Commissioner, T.C. Memo. 1983-543; Estate of Biagioni v. Commissioner, T.C. Memo. 1981-660; Duffield v. United States, 136

F. Supp. 944 (E.D. Pa. 1955).  The contingent nature of a claim bears on the question of the value of the claim, not on its includability in a decedent's gross estate.  Estate of Curry v. Commissioner, supra at 546.

Claims arising from events occurring after a decedent's death, (1) are those of the estate, (2) have not passed to the estate from the decedent, and consequently, (3) are not included in the decedent's gross estate.  Conn. Bank & Trust Co. v. United States, 465 F.2d 760 (2d Cir. 1972) (property interest arising after the decedent's death is not property owned at death and not part of the gross estate under section 2033); Mandel v. Sturr, 266 F.2d 321 (2d Cir. 1959).

In the case at hand, the malpractice action against Eckell, Sparks that related to the law firm's handling of decedent's affairs during her life is an interest that decedent possessed as of the date of her death.  However, that part of the malpractice action relating to the return of the fees paid by the estate to Eckell, Sparks during Ms. Hurley's administration of the estate is not an interest that decedent possessed on the date of her death because it arose from events occurring and for services rendered after decedent's death.  Any claim for such wrongdoings belongs to the estate.  Similarly, the value of any claim by the Glovers against Eckell, Sparks is not included in decedent's gross estate

because decedent possessed no interest in such a claim as of the date of her death.

1.   <u>Fees of $247,500 Ordered by Court To Be Returned to Estate</u>

Respondent acknowledges that decedent's gross estate should not be increased by the return of the $247,500 of attorney's fees paid by the estate to Eckell, Sparks during the administration of the estate, as ordered by the Orphans' Court.  Respondent contends, however, that because the settlement agreement among the law firm, the administrators pro tem., and the Glovers failed to allocate the settlement among the estate's cause of action for the return of the fees, the Glovers' claims, and decedent's cause of action for malpractice, there is no way of determining what part, if any, of the $750,000 settlement represents repayment of the $247,500 in attorney's fees.  We disagree.

When, as in this case, a settlement agreement does not allocate the settlement among claims, the "intent of the payor" in making the payment is an important factor in determining the amounts properly allocable to the various claims.  <u>Knuckles v. Commissioner</u>, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; <u>Agar v. Commissioner</u>, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21; <u>Metzger v. Commissioner</u>, 88 T.C. 834, 847-848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).  If the payor's intent cannot be clearly discerned from the settlement agreement, the payor's intent must be

determined from all the facts and circumstances of the case. Factors to be considered include the details surrounding the litigation in the underlying proceeding, the allegations contained in the payee's complaint and amended complaint in the underlying proceeding, and the arguments made in the underlying proceeding by each party. See, e.g., Estate of Morgan v. Commissioner, 332 F.2d 144, 150-151 (5th Cir. 1964), affg. in part and revg. in part 37 T.C. 31 (1961); Threlkeld v. Commissioner, 87 T.C. 1294, 1306 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Bent v. Commissioner, 87 T.C. 236, 245 (1986), affd. 835 F.2d 67 (3d Cir. 1987). No single factor is determinative; rather, in a given case, a factor may be ignored or be deemed persuasive. Threlkeld v. Commissioner, supra at 1306.

With these principles in mind, we analyze the Eckell, Sparks settlement agreement.

First, we are mindful that respondent was not a party to the lawsuit that resulted in the order of the Orphans' Court requiring Eckell, Sparks to return the $247,500 in attorney's fees it received from the estate. Therefore, res judicata or collateral estoppel does not apply. Commissioner v. Estate of Bosch, 387 U.S. 456, 463 (1967). Second, the decision of the Orphans' Court requiring Eckell, Sparks to return the fees is not the decision of the State's highest court. Consequently, the Orphans' Court's determination of Pennsylvania law is not per se conclusive for

Federal estate tax purposes.  Id. at 465.  But we should and will give "proper regard" to the Orphans' Court's interpretation of Pennsylvania substantive law.  Id.

We believe that the order of the Orphans' Court directing Eckell, Sparks to repay the fees received from the estate had a major bearing on the law firm's decision to make the $750,000 settlement payment and that the order should be given significant weight with respect to the apportionment of the settlement proceeds.  The $750,000 was intended to settle all claims made against Eckell, Sparks, including the estate's claim for the return of the $247,500 of fees.  Indeed, had Eckell, Sparks failed to repay the entire $247,500, it would have been in contempt of the order of the Orphans' Court.

The totality of the uncontradicted evidence in this case persuades us that it was the intent of Eckell, Sparks to have $247,500 of the $750,000 settlement amount be for (and thus $247,500 should be allocated to) the attorney's fees that the Orphans' Court ordered be returned to the estate, leaving the balance of the $750,000 settlement to be allocated among all other claims involved in the proceedings.  In this regard, we are mindful that the $247,500 paid to Eckell, Sparks by the estate came from funds that had been included in determining decedent's gross

estate.  Were we not to make this allocation, decedent's gross estate would be increased by the repaid fees, which in essence would cause the $247,500 to be taxed twice.[11]

### 2.  Amount Distributed to Glovers Under Plaintiffs' Agreement

We now turn our attention to whether any part of the $750,000 settlement should be allocated to the Glovers' claim, which would have the effect of reducing decedent's interest in the malpractice claim.

The only claim made in the lawsuit that relates specifically to the Glovers (rather than to Eckell, Sparks's malpractice in the preparation of the will or in connection with the administration of the estate) is count II.  In count II, the plaintiffs claimed that Eckell, Sparks was liable for $340,270, together with interest and costs for attorney's fees incurred by the Glovers in contesting decedent's will.  The trial court dismissed this claim, with prejudice, finding that the Glovers lacked standing to assert the claim.  The court additionally found that the claim could not be asserted separately but rather was a component of the damages resulting from the malpractice, if any, committed by Eckell, Sparks in preparing the will.  (Damages resulting in the malpractice, if any, committed by Eckell, Sparks in preparing decedent's will

---

[11]    Decedent's estate agrees that attorney's fees of $247,500 paid to Eckell, Sparks that the Orphans' Court ordered be returned to the estate are not deductible as administrative expenses under sec. 2053(a)(2).

constituted a claim that decedent possessed at the date of her death. And, as noted previously, the value of any such claim is included in decedent's gross estate. (But see infra pp. 40-51 for deduction of attorney's fees as an administration expense under section 2053(a)(2).) Although the decision of the superior court is not the decision of the State's highest court, and hence is not per se conclusive for Federal income tax purposes, we should and will give proper regard to the superior court's interpretation of Pennsylvania substantive law.

Aside from the $247,500 which the Orphans' Court ordered returned to the estate, the evidence convinces us that no portion of the $750,000 settlement amount should be allocated to the value of any matter other than the malpractice claim that decedent possessed at the date of her death. We do not believe that the Glovers had any meritorious claims against the law firm in their own right. To the contrary, the dismissal of all claims asserted by the Glovers against Eckell, Sparks (on the grounds that the Glovers lacked standing to bring any claims) is strong indication that the value of the Glovers' claims was negligible at best.

As stated, the parties stipulated that the $750,000 settlement represents the starting point in determining the value of decedent's interest in the malpractice claim as of the date of decedent's death. We therefore hold that $502,500 ($750,000 less $247,500 allocated to the return of fees) is the gross value of

decedent's interest in the malpractice claim against Eckell, Sparks. Pursuant to the parties' agreement, this $502,500 should be reduced by $203,659 for legal costs in prosecuting the malpractice, leaving a net value of $298,841. Pursuant to the parties' agreement, we next must multiply the $298,841 net amount by .438233 (the present value factor), leaving $130,962 (rounded) as the value of decedent's interest in the malpractice claim as of the date of death.

Issue 2. <u>Whether That Portion of the Proceeds From the Settlement of Claims Against the Law Firm of Eckell, Sparks Paid to the Residuary Beneficiaries Is a Deductible Expense in Determining Decedent's Taxable Estate</u>

Decedent's estate argues that, if we determine that no portion of the $750,000 settlement is allocable to the Glovers' claim, then the portion (60 percent) of the Eckell, Sparks settlement proceeds payable to the Glovers pursuant to the plaintiffs' agreement is deductible (in determining decedent's taxable estate) either as an administration expense within the meaning of section 2053(a)(2) and section 20.2053-3(c)(3), Estate Tax Regs., or as a claim against the estate within the meaning of section 2053(a)(3) and section 20.2053-1(a)(1), Estate Tax Regs. We disagree.

An estate may deduct as claims against the estate only those claims that are "enforceable against the decedent's estate" and only those amounts that "represent personal obligations of the decedent existing at the time of his death". Sec. 20.2053-4, Estate Tax Regs. The plaintiffs' agreement was not an obligation

of decedent existing at the date of her death. Therefore, the 60 percent of the settlement proceeds payable to the Glovers under that agreement is not deductible as a claim against the estate within the meaning of section 2053(a)(3).

Moreover, when founded on a promise or agreement, the deduction for a claim against an estate is allowed only to the extent that the claim was contracted bona fide and for an adequate and full consideration in money or money's worth. Sec. 2053(c)(1)(A); sec. 20.2053-4, Estate Tax Regs. The "bona fide" and "consideration" elements in section 2053(c)(1)(A) are related but separate requirements; and if either is missing, the deduction fails. Estate of Scholl v. Commissioner, 88 T.C. 1265, 1279 (1987). The requirement of an adequate and full consideration in money or money's worth may not be predicated solely on the fact that the contract is enforceable under State law. United States v. Stapf, 375 U.S. 118, 130-131 (1963). The requirement of "'consideration in money or money's worth' * * * invokes a higher standard of consideration than that required to establish the validity of a contract under State law". Estate of Carli v. Commissioner, 84 T.C. 649, 658 (1985).

A State trial court decree having Federal estate tax implications does not automatically bind the Commissioner if the Commissioner was not a party to the proceeding. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); Estate of Rowan v.

Commissioner, 54 T.C. 633, 636-637 (1970).  This principle applies specifically to the estate tax deductibility of items listed in section 2053(a), including administrative expenses and claims against the estate.  United States v. White, 853 F.2d 107, 113-115 (2d Cir. 1988); Estate of Lewis v. Commissioner, 49 T.C. 684, 688 (1968).

Section 20.2053-1(b)(2), Estate Tax Regs., describes how a court decree affects estate tax deductions under section 2053(a):

> The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends.  If the court does not pass upon those facts, its decree will, of course, not be followed.  For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. However, the decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends.  It must appear that the court actually passed upon the merits of the claim.  This will be presumed in all cases of an active and genuine contest.  If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary.  If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits.  It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant.  The decree will not be accepted if it is at variance with the law of the State; as, for example, an allowance made to an executor in excess of that prescribed by statute.  On the other hand, a deduction for the amount of a bona fide indebtedness of the decedent, or of a reasonable expense of administration, will not be denied because no court

decree has been entered if the amount would be allowable under local law.

Clearly, if a local court does not adjudicate the merits of a claim, which typically would be the case in a nonadversarial proceeding, the presumption that the decision of the local court on allowability "will ordinarily be accepted" does not apply. Wolfsen v. Smyth, 223 F.2d 111, 113-114 (9th Cir. 1955); First-Mechanics Natl. Bank v. Commissioner, 117 F.2d 127, 129-130 (3d Cir. 1940), affg. 40 B.T.A. 876 (1939); sec. 20.2053-1(b)(2), Estate Tax Regs. To this end, in this case, a State court has not made an independent review of the proposed allocation of the settlement of the Eckell, Sparks malpractice case as set forth in the plaintiffs' agreement. But the State courts did find that the Glovers lacked standing with respect to all claims made against Eckell, Sparks.

The Glovers and the administrators pro tem. were not adversaries with respect to the claims against Eckell, Sparks, the dollar amount contained in the settlement agreement, or the allocation memorialized in the agreement between the Glovers and the administrators pro tem.

Decedent's estate would face additional hurdles even if the record did show that a State court had passed on the merits of the claims and that the highest court of Pennsylvania would allow the claims against the estate. Section 20.2053-1(b)(2), Estate Tax Regs., is to be construed in harmony with section 2053(c)(1)(A), which requires claims founded on a promise or agreement to be

"contracted bona fide and for an adequate and full consideration in money or money's worth". As noted heretofore, "adequate and full consideration" for purposes of section 2053(c)(1)(A) is a higher standard of consideration than that required to establish the validity of a contract under State law. Estate of Carli v. Commissioner, supra. The record is devoid of any evidence that the Glovers' claim for 60 percent of the settlement proceeds was contracted for an adequate and full consideration in money or money's worth. Indeed, aside from dubious RICO claims and claims for punitive damages, the damages related to the Glovers' claims against Eckell, Sparks (attorney's fees of $340,270, together with interest and costs) are substantially less than the damages related to decedent's claims and those of the estate (e.g., over $1 million related to the claim of malpractice in preparing the will). To be deductible as an administration expense, the regulations require that the payment to the Glovers must have been "essential to the proper settlement of the estate". Sec. 20.2053-3(c)(3), (a), Estate Tax Regs. We do not find that the payment to the Glovers was essential to the proper settlement of the estate. In considering this matter, we are mindful that it is the duty of an administrator to collect and protect assets of the estate.

There is no indication that the specific bequests in decedent's will to beneficiaries other than the Glovers could not be satisfied with the assets in decedent's estate if the claims

against Eckell, Sparks failed. Any recovery by the administrators pro tem. would devolve to the Glovers as the residuary beneficiaries. All the claims raised in the suit were claims that belonged to either decedent or the estate. The 60/40 division, instead of reflecting the merits of the coplaintiffs' respective claims, was in essence a vehicle for reducing the gross estate by channeling to the Glovers funds that would go to them anyway as residuary beneficiaries. We hold, therefore, that the Glovers' claim for 60 percent of the settlement proceeds is not deductible as a claim against the estate or deductible as an administration expense.

Issue 3.  Whether Payments Made by Decedent's Estate to Attorneys Representing the Residuary Beneficiaries or To Be Paid to Mr. Glover for His Efforts in Discovering the Misappropriation of Decedent's Assets by Ms. Hurley and Mr. Ross Are Deductible as Administrative Expenses Pursuant to Section 2053(a)(2) or as Claims Against the Estate Pursuant to Section 2053(a)(3)

Decedent's estate argues that the payments it made to the Glovers' attorneys and any payments it will make to Mr. Glover for his efforts in discovering the misappropriation of decedent's assets by Ms. Hurley and Mr. Ross constitute administration expenses within the meaning of section 2053(a)(2) and section 20.2053-3(c)(3), Estate Tax Regs.

For estate tax purposes, the value of the gross estate is reduced by amounts incurred for "administration expenses" that are allowable by the laws of the jurisdiction under which the estate is

being administered. Sec. 2053; Estate of Swayne v. Commissioner, 43 T.C. 190 (1964). The amounts deductible as administration expenses are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate. Sec. 20.2053-3(a), Estate Tax Regs. Expenditures not essential to the proper settlement of the estate but incurred for the individual benefit of the heirs, legatees, or devisees are not allowed as deductions. Id. Further, attorney's fees incurred by beneficiaries incident to litigation as to their respective interests are not deductible if the litigation is not essential to the proper settlement of the estate. Sec. 20.2053-3(c)(3), Estate Tax Regs.

Respondent concedes that the services provided by Mr. Glover and the Glovers' attorneys led to the discovery of Ms. Hurley's misappropriation and the Eckell, Sparks malpractice, and the removal of Ms. Hurley as executrix. Respondent also agrees that the services were essential to the proper settlement of the estate. Respondent argues, however, that services provided by the attorneys for the Glovers' will contest and for the attorneys' involvement in the malpractice litigation were unnecessary to the settlement of the estate and were primarily for the personal benefit of the Glovers. Furthermore, respondent contends that the record in this case does not establish the portion of the fees allocable to the

various services provided, and, therefore, no portion of the fees should be allowed as a deduction.  Respondent concludes, therefore, that the fees for those services are not deductible.

In the case at hand, we are satisfied that payment of a portion of the Glovers' attorney's fees incurred in the will contest and payment of reasonable compensation to Mr. Glover for services he provided to the benefit of the estate are permitted under Pennsylvania law.  In considering this matter, we are mindful that it is the duty of an administrator to collect and protect the assets of the estate and that the administrator is justified in employing an attorney or other third parties to assist the administrator in collecting or protecting the assets of the estate.

Under Pennsylvania law, the exceptant to the account of an administrator ordinarily must pay his own counsel fees.  In exceptional cases, however, the exceptant may be allowed counsel fees payable out of estate funds.  In re Estate of Lux, 389 A.2d 1053 (Pa. 1978).  Where the efforts of an exceptant and his counsel result in the substantial benefit to the estate, such as requiring an administrator to include in the inventory of the estate valuable assets previously not included, it is within the discretion of the Orphans' Court to compensate the exceptant and his counsel out of estate funds.  Id.; see also In re Estate of Vaughn, 461 A.2d 1318, 1320 (Pa. Super. Ct. 1983).

> [D]enial of compensation for * * * [the exceptant's]
> attorney's fees out of estate funds * * * [would] permit

> the other heirs, who have never filed exceptions, to reap the benefits of the efforts of * * * [the exceptant's] counsel without having to share in the expense of producing those benefits.  This would be a manifestly unreasonable and inequitable result. * * *

In re Estate of Vaughn, supra at 1320; see also Commonwealth ex rel. Hensel v. Order of Solon, 44 A. 327, 328 (Pa. 1899) (where the attorney of one of several parties, all equally interested, secures a fund which would otherwise have been misappropriated or lost, and all share equally in the distribution, it is but equitable that all should share in the expense which produced the fund, although but one moved in the matter).  "Under the circumstances * * * [the beneficiary] must be allowed reasonable counsel fees out of the estate funds."  In re Estate of Vaughn, supra at 1321.

We conclude that under Pennsylvania law, Mr. Glover would be entitled to reasonable compensation for services he rendered for the benefit of the estate.  See, e.g., id. at 1320 (where the executor, a beneficiary of the estate, expended extra effort in a role separate and distinct from his role as executor, he was entitled to fair and reasonable compensation for his additional services).  Paying a beneficiary, instead of a third party, for services rendered is not unfair to the estate.  Id.

"In Pennsylvania, the test for determining the appropriateness of the fees charged for services rendered in the administration of an estate has always been 'reasonableness'."  Estate of Phillips, 616 A.2d 667, 668 (Pa. Super. Ct. 1992) (citing In re Estate of

Burch, 586 A.2d 986, 987 (Pa. Super. Ct. 1991)).  We are of the opinion that a Pennsylvania court would uphold the estate's payment for Mr. Glover's services if there is sufficient evidence to conclude that the payment was fair and reasonable even though Mr. Glover was a beneficiary of the estate.  See, e.g., Estate of Getz, 618 A.2d 456, 460-462 (Pa. Super. Ct. 1992); In re Estate of Vaughn, supra at 1320.

The services rendered by Mr. Glover and his attorneys resulted in the recovery of a significant sum for the estate.  Consequently, we find it is proper for the administrators pro tem. to pay from estate funds the fees for services rendered before the Orphans' Court removed Ms. Hurley as executrix and appointed the administrators pro tem.  See, e.g., Estate of Bruner, 691 A.2d 530, 535 (Pa. Super. Ct. 1997); In re Estate of Vaughn, supra.  Indeed, respondent acknowledges that the amount incurred for services rendered before that time by Mr. Glover's attorneys is $91,192.

A beneficiary who seeks compensation has the burden of demonstrating that the amount requested is just and reasonable.  In re Estate of Salus, 617 A.2d 737, 742-743 (Pa. Super. Ct. 1992); Estate of Phillips, supra.  The Orphan's Court can fashion an award of just and reasonable compensation provided there is evidence of the services provided.  But when the compensation awarded is without support in the record, the award cannot stand.  In re Reed Estate, 341 A.2d 108 (Pa. 1975).

Mr. Glover has asked the estate to compensate him for 1,858 hours of his services at the rate of $90 per hour for total compensation of $167,220. He provided time records showing the dates he worked on matters related to the estate and the time he expended on those matters. Mr. Holleran testified at the trial in this case that the time Mr. Glover expended in reconstructing decedent's accounts and tracking the funds misappropriated by Ms. Hurley and Mr. Ross provided substantial benefit to the estate. Mr. Holleran's testimony was uncontroverted. Mr. Glover, however, did not testify at the trial in this case, and the time records he provided to Mr. Holleran generally reflect activity commonly associated with the activities of a party to litigation, e.g., meetings and conversations with his attorneys and preparation for and attendance at depositions and hearings. Upon reviewing Mr. Glover's time records, we are convinced that most of the time for which he seeks compensation was expended in pursuing his challenge of the validity of the will and specifically the bequest resulting from the interlineation that gave the farm to the Pierces and the bequest of $1 million to the University of Pennsylvania. However, 284.15 hours of Mr. Glover's time (detailed as follows) is attributable to reconstructing decedent's accounts and tracking the funds misappropriated by Ms. Hurley and Mr. Ross, and we therefore hold that the amount for these services is deductible:

| Date | Description | Hours Claimed |
|------|-------------|---------------|
| 9/4/91 | Conv. w/Joe Monte on estate accts; Pierce loan, back taxes due | .50 |
| 9/26/91 | Meet w/Hurley; Change of will, unpaid tax | 2.00 |
| 10/18/91 | Ltr. to Lynn Hurley on missing personal items | .50 |
| 2/20/92 | Conv. w./Tracy on procedure to object to account, Endy's decree; fax decree to Tracy | .33 |
| 4/6/92 | Mtg. w/Monte on Margin acct., etc. | 2.25 |
| 7/13/92 | Hurley; Jayne K, investment of est. assets, acctg. | .33 |
| 7/15/92 | Langdon; Ross | .50 |
| 10/14/92 | Skinner; Ross, Hurley, recordkeeping, his work | .50 |
| 11/18/92 | Send fax to Craig; Conv w/Skinner on work, tax returns | 2.25 |
| 11/19/92 | Cheltenham Bank; FCG, Ross's business | .50 |
| 1/4/93 | Skinner; On Ross, taxes, etc. | .66 |
| 1/5/93 | Langdon; Hurley Ross history; conv. w/Jayne on same Thomson's address | 1.25 |
| 1/13/93 | Prep. for deposition; review Langdon info.; Conv. w/Thomson, FCG, Farm, Ross, Hurley, etc. | 1.66 |
| 1/15/93 | Dr. Morgan; FCG health; Mtg w/Skinner; review records of returns, extensions, etc. | 4.33 |
| 1/23/93 | Bill Thomson; Ross, Ice Cream B, records, etc.; review of Eckell docs. | 4.50 |
| 1/24/93 | Create summary of funds wired from brokerage accts. | 2.50 |
| 2/2/93 | Skinner; background info. | .50 |
| 3/4/93 | Fax to Craig on Wilm Trust checks to Pierces; Conv. w/Craig; Review checks, etc. | 2.25 |
| 3/4/93 | Review Comm Fed checks for 14170; Tabulate a summary of noteworthy checks | 4.50 |
| 3/5/93 | Catalogue checks | 4.50 |
| 3/5/93 | Ltr & fax to Craig & Guy on initial results of reviewing FCG's Comm Fed acct 14170 | 2.50 |
| 3/8/93 | Ltr to Gordon & Katherine explaining that initial review of Comm Fed checks reveal theft; research | 6.50 |

| Date | Description | Hours Claimed |
|------|-------------|---------------|
| 4/16/93 | Conversation w/Clearwater records; summarize Wilm. Trust checks | 6.75 |
| 4/16/93 | Enter Comm. Fed checks from both accts into framework spreadsheets | 8.50 |
| 4/17/93 | Summarize Comm. Fed checks and contrast w/Hurley deposition | 6.50 |
| 4/18/93 | Finish drafting memo contrasting Hurley's depo to financial records; mail to Craig | 8.50 |
| 4/20/93 | Further review of Comm Fed checks; Ltr to Alice Bucha on missing cks; Ltr listing accts involved w/FCG | 3.00 |
| 4/21/93 | Review summary w/Tracy, conver w/Craig; Send summary of Comm Fed accts to G&K | 2.25 |
| 5/6/93 | Fax to Craig listing accts; Comm Fed representative needed to identify | .50 |
| 5/13/93 | Meet w/Craig & Guy; review checks | 4.00 |
| 5/14/93 | Transfer spreadsheet info to Excel; Update summary; review cks w/Craig | 7.00 |
| 5/17/93 | Review cks w/Craig | 2.50 |
| 6/1/93 | Update spreadsheets on Comm Fed accts incorporating Hurley testimony; Conv. w/Craig | 2.50 |
| 6/10/93 | Meet w/Gordon & Craig in prep for hearing; Create flow chart for FCG's Comm Fed accts. | 10.75 |
| 6/11/93 | Meet w/Craig & Guy to prepare for hearing; finalize flow chart, summaries | 12.25 |
| 7/14/93 | Review Fidelity checks w/Craig | 1.00 |
| 7/19/93 | Conv. w/Mark; Answer Mark's questions on accounts; hear estate position | .50 |
| 7/22/93 | Conv. w/Craig & Mark; request Hurley be dismissed from U.P. Trust, include Ross in complaint, review administrator position | .50 |
| 7/22/93 | Copy & send Mark T. brokerage records w/summaries | 1.50 |
| 7/28/93 | Begin to tabulate Fidelity estate acct checks | 2.00 |

| Date | Description | Hours Claimed |
|------|-------------|---------------|
| 7/29/93 | Tabulate & review est acct chks, draft list of accts to investigate, prepare for will contest, Eckell claim | 5.75 |
| 8/2/93 | Ltr to Mark T & Craig on Fidelity Bank accts. | 1.00 |
| 9/20/93 | Review of Fidelity cks sent by Mark Tunnell; ltr. to Baumeister w/copy of adm. complaint | 2.50 |
| 9/21/93 | Review of Fidelity cks; summary ltr to Tunnell | 3.20 |
| 10/29/93 | Prepare summary of Lynn's sch of assets; fax to Mark & Craig on Ms. Hurley's sch of assets | 1.75 |
| 11/9/93 | Review Merrill CMA's & Comm. accts of Hurley & friends; begin summary ltr. | 6.00 |
| 11/10/93 | Finish reviewing accts, ltr to Tunnell, fax Bucha | 3.00 |
| 11/12/93 | Review Fidelity accts, ltr to Tunnell; review estate acct w/D. Scarlett | 1.50 |
| 11/21/93 | Review Del Trust statements | 1.00 |
| 11/22/93 | Review Fidelity accts, Com Fed accts, docs for Hurley's deposition | 6.50 |
| 11/23/93 | Review Fidelity accts, Com Fed accts, docs for Hurley's deposition | 9.10 |
| 12/31/93 | Summary of '85 & '86 wires, create flow chart; review acctg, ltr to Craig, copy to Mark | 5.50 |
| 1/21/94 | Review info on Hurley/Ross jt acct w/Craig & R III; general review | 5.25 |
| 1/22/94 | Summarize inflows of Del Trust acct per Tunnell's request; conv. w/McllIvane | 5.50 |
| 1/23/94 | Summarize inflows in letter to Tunnell | 6.75 |
| 2/15/94 | Prepare for trial w/Craig & Guy; dinner w/Hurley | 8.00 |
| 3/9/94 | Finish fax of revision to brief, fax to Tracy; review Hurley accts 13669 & 14196, fax to Bucha | 6.25 |
| 3/10/94 | Review Hurley accts 14196 & fax Bucha | 3.10 |
| 3/16/94 | Review Comm accts summaries; prepare for case | 3.10 |
| 3/21/94 | Review courts checks, compare to summary, amend summary, prepare exhibts, etc. | 9.50 |

| Date | Description | Hours Claimed |
|------|-------------|---------------|
| 9/30/94 | Review Hurley Merrill statements; fax to Craig | 1.50 |
| 12/29/94 | Review w/Boulden Hurley & Ross's various Co's.; Mail copies of Emper's notes & litigation on same; review Boulden's fax | 3.75 |
| 1/6/95 | Rev Boulden's ltr to Heckshire; FedEx info on appeal; copy & mail Hurley test. & sch. of assets to Tunnell as requested | 6.50 |
| 3/3/95 | Review Boulden's complaint, Heckscher ltr; begin to review Hurley pers. accts for Lubline | 4.50 |
| 3/4/95 | Copy cks, transcript records for Lubline | 1.75 |
| 3/5/95 | Copy records showing Hurley's use of funds on RE for Lubline, enter into spreadsheet & ltr. | 6.33 |
| 3/8/95 | Review complaint, answer Boulden's ques.; Review ES docs; Search for Del Trust cks, fax to Tunnell Hurley questions | 5.25 |
| 6/8/95 | Discuss settlement w/Hurley & Jim Draper; inform Tunnell & Lubline | .75 |
| 7/18/95 | Review settlement agree, review Hurley's schedules; discuss w/Boulden, review w/Tunnell | 1.50 |
| 8/22/95 | Discuss settlement w/Hurley, Draper & Tunnell | 1.25 |
| 8/23/95 | Rev settlement w/Lubline; Request Holleran to buy mtge on RD 6, discuss Pierce case w/Tunnell; discuss settlement w/Hurley | 1.60 |
| 11/21/96 | Per Boulden's request, review Skinner, Newton & Enbon notes; Hurley notes | 1.75 |
| 2/7/97 | Assemble & organize docs per Boulden's request for acct & Eckell suit | 5.50 |
| 8/4/98 | Conv w/Heckshire's off; cpy PA & Fed estate & local tax returns and FedEx | 1.75 |
| 10/21/98 | Answer Ferrone's Qs on Orphans Ct rept; copy joint prop section of estate tax return & bank accts | 2.25 |
| 10/23/98 | Review Orphan's Ct record, Eckell records, FCG's checking acct; fax Ferrone | 1.33 |

| Date | Description | Hours Claimed |
|------|-------------|---------------|
| 11/6/98 | Review Heckshire's rept; answer Ferrone's quest; per Ferrone request, copy FCG/Hurley jt acct & estate acct statements | 1.33 |
| 11/10/98 | Per Ferrone's request, review date of death brokerage accts to determine how 50,000 wire was accounted for; fax to Ferrone | 1.00 |
| 11/17/98 | Per Holleran's request, copy & mail docs re: Eckett's account & estate tax returns | 2.00 |
| 1/7/99 | Find, review & copy docs to respond to Eckell's interrog.; review Hurley's financial records | 5.50 |
| 1/8/99 | Finish copying Hurley's financial records, take all copies out for reproduction, draft answer for interrog. | 3.75 |
| 6/30/99 | Conv: Tunnell on adjudication of acct schedule for civil case | 1.20 |
| 4/17/00 | Per Tunnell's request, review the check summaries made for case against will | .75 |
| 4/18/00 | Per Tunnell's request, get copies of check summaries diagrams, etc.; per Farrone's request, review Cloud & Carter's testimony | 1.30 |
| Total | | 284.15 |

Mr. Holleran testified that Mr. Glover's services were comparable in value to the services of a paralegal and that reasonable compensation for those services is $90 per hour. On the basis of the record before us, we conclude that it is just and reasonable for the estate to deduct, as an administrative expense pursuant to section 2053(a)(2), $25,574 ($90 x 284.15 (rounded)) for services rendered by Mr. Glover, provided the payment for that amount (or greater) is approved by the Orphans' Court. In re Estate of Salus, 617 A.2d 737 (Pa. Super. Ct. 1992); Estate of Phillips, 616 A.2d 667 (Pa. Super. Ct. 1992). On the other hand, we conclude the estate is not entitled to deduct any amount in excess of $25,574 for the remainder of Mr. Glover's time because any excess would be unrelated to the reconstruction of decedent's accounts or the illegal activities of Ms. Hurley and Mr. Ross.

Conclusion

In summary,

(1) The value of decedent's interest in her malpractice claim against Eckell, Sparks as of the date of her death is $130,962.

(2) The estate is entitled to deduct $91,192 of the Glovers' attorney's fees paid by the estate, and $25,574 for services of Mr. Glover, provided the payments for these items (in the aforementioned amounts or greater) are approved by the Orphans' Court.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>